## SUPREME COURT.

MORTIMER BROWN agt. ALLEN PENFIELD, JAMES M. PENFIELD and ALLEN P. HARWOOD.

Where the plaintiff, being in the *possession of negotiable paper* with *apparent title*, and no contradictory evidence to overthrow it, he shows a legal right as owner to recover.

Where a referee not only decides against the *weight of evidence,* but errs in the application of the *rules of law*, it is error of *fact and of law.* And a wrong result upon *undisputed evidence* is an *error of law.*

*Albany General Term, March,* 1861.

GOULD, HOGEBOOM and PECKHAM, *Justices.*

THIS action was commenced October 6th, 1853, to recover the amount of two drafts, each drawn and indorsed by Miles White, and accepted by the defendants, by their firm name of Penfield, Harwood & Co., each for $1,000; the one dated October 27th, 1852, at six months, the other dated September 10th, 1852, at eight months. The defendants answered, denying each and every allegation in the complaint. They deny that Miles White made the drafts or indorsed

them, or that the defendants accepted them; deny the transfer and ownership by plaintiff; set up that defendants were acceptors, and that the drafts were used to pay precedent debts; allege payment; that the drafts were diverted from the purpose for which they were made; that the drafts were not negotiated until after they became due; that the plaintiff is not the *bona fide* holder, but White is, and that White got the acceptances by fraudulently pretending to be solvent when he was not so.

The plaintiff replied. The cause was referred to Gardner Stow, Esq., and tried before him. He reported in favor of the defendants, and judgment was entered against the plaintiff and for the defendants for costs, $169.61, November 28th, 1859. Plaintiff excepted to the report and appealed from the judgment.

Miles White was a manufacturer of axes at Cohoes, and the defendants were iron manufacturers at Crown Point, and in their business arrangements the defendants accepted the drafts in suit and many more for the accommodation of White. Miles White became embarrassed the last of November, 1852, and assigned December 3, 1852. The drafts in question were negotiated with H. Tator & Co., consisting of Henry Tator and George Eigenbrodt, for cash, one on the 29th October, 1852, and the other on the 30th November, 1852. Eigenbrodt swears that the firm of H. Tator & Co. did not hold the drafts in question at the time of signing the compromise paper. The compromise paper is dated March 23d, 1853. Penfield, Harwood & Co. compromised with their creditors for a large amount of liabilities on acceptances of Miles White's drafts, and intended to find and compromise all such liabilities upon the paper dated 23d March, 1853, mentioned above. In this compromise H. Tator & Co. included all the acceptances which they then claimed to own, *i. e.* two for $1,000 each. The holders of a portion of the acceptances did not sign the compromise paper. Penfield had his attention called before

the date of the compromise paper, and in December, 1852, to the fact that the two acceptances in suit were outstanding and not included, and not proposed to be included in the compromise. In December, 1852, December 29th, 1852, or January 5th, 1853, H. Tator & Co., as Percy swears, and is not contradicted by any express evidence, sold and delivered these drafts to John T. Percy for $5. H. Tator was not examined as a witness at the trial, having previously died. Percy continued to hold them until September, 1853, when he sold them to R. W. Townsend, of New York, for $1,000, and took Townsend's note for that amount. A few days after that the plaintiff purchased these drafts of a man by the name of Gibbs, for $1,200, and ,gave his note at twelve months for that amount, and Percy advised him to make the purchase. These notes were still unpaid at the time of the trial. Percy appears to have been the principal actor and negotiator in the whole transaction. The purchase was September 20th, 1853. On the 22d the plaintiff sent the acceptances to Giles B. Kellogg, Percy's partner, to collect. Upon these facts the referee reported that the drafts were made by Miles White, and accepted by the defendants for the accommodation of Miles White. That the drafts were transferred to H. Tator & Co., in due course of dealing, for value before maturity. *But that H. Tator & Co. never sold or assigned the said bills of exchange, or parted or intended to sell or part with their interest therein, nor were the same transferred to the plaintiff, nor did he pay value therefor, nor purchase the same, nor had he any interest therein at the commencement of this action, and that the plaintiff was not entitled to recover.* The plaintiff excepted to so much of the report as is here printed in italics. Judgment having been perfected, the plaintiff appealed therefrom to the general term.

M. I. TOWNSEND, *for plaintiff, appellant.*
W. A. BEACH, *for defendants, respondents.*

By the court, HOGEBOOM, Justice.   The sole question on the merits in this case is whether the plaintiff was at the commencement of the action the owner of the demand prosecuted.   The referee has reported against him on this question.

The referee finds, and the undisputed testimony is, that Tator & Co. were at one time, and before maturity, the owners of the drafts in question for value.   We may, therefore, take that fact for granted.   It is equally clear that Tator & Co. did not compromise these demands, and that they did not attempt, intend or agree to compromise them. For although they had them when first spoken to about a compromise, they were not, in fact, embraced in the compromise, nor so supposed to be either by Tator & Co. or Penfield & Co.   Nor was the compromise itself binding.   It was not signed by Penfield & Co., nor by all the creditors.

The clear preponderance of evidence is, if not the undisputed fact, that at the time of the compromise, Tator & Co. did not own the demands.   Tator himself was dead at the time of the trial.   Eigenbrodt, his partner, expressly swears to such non-ownership, although perhaps he had no personal knowledge upon the subject.   The books of Tator & Co. show the same fact.   Penfield & Co. did not compromise upon the understanding that Tator & Co. then owned the drafts.   In that particular, at least, they were not imposed upon, but acted with their eyes open.   It is difficult to see how, under these circumstances, notwithstanding the report of the referee, Tator & Co. could now be listened to, if they claimed them, even if the statute of limitations was not in their way, for, as before stated: 1, the clear preponderance of evidence is against them ; 2, they assumed not to be the owners, and so allowed Penfield & Co. to regard them ; 3, they had at least authorized Percy to sell them.

They were, in fact, sold or parted with by Percy, by authority from Tator & Co., and in a manner to pass the

title.   It is obvious that Tator & Co. intended to part with them—to put them out of their hands so as not to have them subject to the compromise.   Percy intended to purchase them—he did purchase them—such is the undisputed evidence.   Percy so swears, and we must take the fact to be so, unless we are prepared to reject his evidence.   The consideration was small, almost nominal, and inadequate to the real value of the drafts.   But that is not decisive against the fact of transfer.   I do not see but the transfer might have been gratuitous and still have been valid if the parties so clearly intended.   (*Richardson* agt. *Mead*, 27 *Barb.*, 178; *Arthur* agt. *Brooks*, 14 *Barb.*, 533; *Robertson* agt. *Gardner*, 11 *Pick.*, 156; *Code*, § 111.)   Whatever agreement, if any, existed between Percy and Tator, as to the ultimate proceeds, it is not proved, and we must not leave too much to mere inference.   If there was any undisclosed understanding, it seems probable that it did not touch the *title* to the drafts, for Tator wanted the title out of him. The defendants should have added further evidence, if any they had upon this subject.   As it stands at present, the evidence of fraud and collusion is unsatisfactory and insufficient, I think, legally to overthrow the apparent title of the plaintiff.

Nor was Percy the owner of the drafts at the time of the commencement of the action.   By the uncontradicted evidence, he sold to R. W. Townsend.   The consideration was adequate, and the story not improbable.   It is not material, at least not decisive, that at the time of the trial Townsend's note, given for the consideration money, had not been paid.   It was not then outlawed.   It may have been collected afterwards or remained in *statu quo* to await an amicable adjustment after the result of this litigation. Percy was at least authorized to sell, and if he sold to Townsend, the title of Tator & Co. and of Percy passed by the act of sale.

So, also, I think it is sufficiently clear that Townsend

sold to Brown the plaintiff. Brown gave his note for the purchase money and immediately prosecuted this demand. Neither Brown's note nor Townsend's was outlawed at the time the testimony was taken. It is not improbable they may have been intended to be paid out of the proceeds of this litigation, or the payment postponed to await its event. And although there are circumstances of some suspicion arising out of this and other facts, they strike me as insufficient to overcome the case made by the plaintiff. The evidence of the transfer from Townsend to Brown is uncontradicted.

I think, therefore, the title of the plaintiff was sufficiently established, and that the referee should have reported in his favor, upon the evidence as it stood. The plaintiff had possession of the drafts; the evidence of transfer was satisfactory till contradicted. Tator & Co. do not claim the drafts; Penfield & Co. did not suppose they belonged to them; Percy does not claim the drafts, and would be estopped by his evidence if he did; Townsend makes no claim to the drafts. So far as the evidence shows, no one else claims them but the plaintiff—Penfield & Co. certainly owe them.

I think the evidence of the proposed compromise and agreement was properly admitted. The question was one of fraud and of actual transfer, and all evidence fairly bearing on that question was properly admissible. The participation of H. Tator & Co., in the compromise, was admissible : 1, to show that they had in fact compromised, and then owned the drafts; 2, to show a motive on their part for a fraudulent attempt to pass off the drafts to Percy, and thus avoid the effect of a compromise ; 3, motives and probabilities are proper subjects of inquiry in cases of alleged fraud.

In my opinion the judgment entered upon the report of the referee should be reversed and a new trial granted, and under the circumstances I think with costs to abide

the event of the action.    1. The referee not only decided
against the weight of evidence, but erred in the application
of the rules of law; 2, the plaintiff being in the possession
of negotiable paper with apparent title, and no contradic-
tory evidence to overthrow it, showed a legal right to
recover; 3, a wrong result upon undisputed evidence is an
error of law.

GOULD, J., concurred.

PECKHAM, J., dissented.