PEOPLE *ex rel.* THOMPSON *v.* McCOMBER *et al.*

*(Supreme Court, Special Term, Allegany County. January, 1889.)*

1. TAXATION—TAXABLE PROPERTY.
   Rents not due on leases for years are not taxable as personal property.
2. SAME.
   Debts, securities, and obligations are taxable, though they are not due.
3. SAME.
   The fact that the owner of personalty changed it into real estate, and then executed leases for years thereon in order to avoid taxation on personal property, does not affect the assessment, which must be governed by the legal position of the property at the time thereof.
4. SAME—REVIEW OF ASSESSMENT.
   A tax assessment may be reviewed on affidavit, though an examination is also allowed.
5. SAME.
   An assessment is presumed to be correct only until the contrary is shown.
6. SAME—COSTS.
   Laws N. Y. 1880, c. 269, § 6, provides that "costs shall not be allowed against assessors or other officers whose proceedings may be reviewed under this act, unless it shall appear to the court that they acted with gross negligence, in bad faith, or with malice." *Held*, that where it did not appear that assessors, in making up the assessment roll, acted otherwise than in good faith, costs on review could not be taxed against them.
7. CERTIORARI—PLEADING.
   A petition for *certiorari*, which clearly states the grounds of the complaint, should not be quashed because it also sets out other grounds not material to the questions involved.

Application by Calvin Thompson for a writ of *certiorari* against Orson McComber and others, assessors, and James K. Hall, supervisor, to correct the tax assessment against relator's personal property.

*Hamilton Ward,* for relator.   *Rufus Scott,* for defendants.

CORLETT, J.   On the 19th day of September, 1887, a writ of *certiorari* was issued on the application of the relator, based upon the claim that he had been unjustly assessed for personal property in the town of Ward, Allegany county.   He filed an affidavit with the assessors to the effect that he had no personal property subject to taxation after deducting his just debts.   He was assessed for $7,000 for personal property.   The assessors examined him upon oath and refused to reduce the assessment.   A referee was appointed to take evidence, and his report is submitted with the other papers.   The return of the assessor to the writ states the way in which he had been previously assessed on personal property.   It also alleges that he had purchased farms, executed leases, reserving rents, giving the lessee an option to purchase.   The leases also charged the tenant with the payment of all taxes, and contained the right of re-entry.   They were for years, usually from seven to nine.   The proof before the referee was largely directed to leases, and the purposes for which they were executed.   The return and evidence satisfactorily show that the purpose of the relator in changing mortgages and other securities into real estate and leases, was to avoid taxation on personal property.   While on the evidence does not distinctly show how much rent was past due and unpaid on the leases, nor does it clearly appear from the return how much, if any, personal property the assessors found outside of the leases, still it is very clear from all the evidence that the theory the assessors proceeded upon was that if the leases were executed to avoid taxation they should be taxed the same as if the money remained in other securities; also that they treated the leases as taxable without distinguishing between the rent in arrears and that to grow due.

The question as to how much, if any, personal property the relator had subject to taxation outside of the leases does not appear to have been considered or passed upon by the assessors.

3 Rev. St. (7th Ed.) p. 2175, § 1, is as follows: "Estates in lands are divided into estates of inheritance, estates for life, estates for years, and estates at will and by sufferance."   Section 5 (same page) provides: "Estates of inheritance and for life shall continue to be denominated estates of freehold, estates for years shall be chattels real, and estates at will or by sufferance shall be chattel interests, but shall not be liable as such to sale on executions."   For the purpose of descent real estate is defined by section 27, p. 2214, Id.   That section expressly provides that leases for years, etc., shall not be included in the term "real estate" for the purposes of descent.   Same statute, section 6, p. 2294, provides that leases from year to year shall be deemed assets, and go to the personal representatives.   Real estate for taxation is defined in 2 Rev. St. (7th Ed.) p. 981, § 2, and personal estate on page 982, § 3.   Leases are not mentioned in either section.   Burrill's Law Dictionary, p. 282, defines chattels real thus: "Such chattels as concern, are annexed to, or savor of the realty; as, terms for years of land."   2 Steph. Comm. p. 65.   Section 1430, Code Civil Proc., provides that real property, including leases, may be sold on execution, where at least five years of the term remains unexpired.   Section 5 of the Revised Statutes, above cited, prevents estates at will or sufferance, though chattel interests, from being sold on execution.   In *Trustees* v. *Dunn,* 22 Barb. 402, it was held that leases were properly taxed as real estate.   The effect of the laws of descent is also considered in that case.   The same was held in *Scully* v. *People,* 104 Ill. 349, decided in September, 1882.   It was there held that rent due is a chose in action, and taxable as a credit, but that rent to grow due is an incident to the land, and is not the subject of taxation against the owner.   So in *City of Buffalo* v. *Le Couteulx,* 15 N. Y. 451, 452, where the court says: "Until the year 1846, there was no authority for taxing the rents reserved on leases as personal estate.   Land, of course, was taxed

as land, but the rents reserved on leases, and not past due, were not personal estates, and therefore not taxed at all." Chapter 327, p. 466, of the Laws of 1846, provides for the taxation of certain leases, amounting either to a freehold, or a life-estate, or for upwards of 21 years. It has beeen amended several times, but not as to the character of the lease, which could be taxed. The object of the act was probably to meet some of the difficulties created by the Van Rensselaer leases, and was the outcome of the anti-rent agitation. The taxes referred to in the statutes were charged to the landlords instead of tenants, but the rule as to ordinary leases remained unchanged. In *Despard* v. *Churchill*, 53 N. Y. 192–199, the courts say that at common law leases for a short term of years were personal property. The court refers to the change made by statute. *Livingston* v. *Hollenbeck*, 4 Barb. 9. It will thus be seen that rents not due on leases for years are not taxable as personal property.

It is insisted by the learned counsel for the assessors that because the relator took a deed of the land, and executed leases for the purpose of avoiding taxation on personal property, the change ought not to exempt it as personal property. While it is true that assessors act judicially while in the discharge of their duties, (*Barhyte* v. *Shepherd*, 35 N. Y. 238,) it does not follow that they have equity powers. This was adjudged in *People* v. *Ryan*, 88 N. Y. 142. It is not suggested that the act of the relator in exchanging mortgages into leases was illegal. He had a right to invest in any form he saw fit, so long as he violated no law. His purpose in making investments in such a way as to escape personal taxation is immaterial. The lands of which he became the owner to enable him to execute leases were assessed at their full value. It is not very easy, therefore, to see how any portion of his property escaped taxation if invested in lands. He having obtained the legal title, and executed leases valid between the parties, the assessors must be governed by the legal position of the property at the time of the assessment.

It is urged by the learned counsel for the relator that debts not due are not taxable. This cannot be so in the very nature of things, otherwise a person by loaning his money on long mortgages or notes would escape taxation altogether. It is suggested that if securities not due can be taxed it could be imposed each year. This is so of all property subject to taxation. A farm is taxed every year upon its value. A good note or mortgage is property the same as land, only in another form, and there is no reason why it should escape the same burden. The question was up in *People* v. *Vail*, 6 Abb. N. C. 206–210, where the court says: "It requires the sum 'due from the directors of the bank or banking association making the report.' * * * It cannot be plausibly argued, if the objects and purposes of the act be considered, that the word 'due' is used in its narrow sense so as to require a statement only of such liabilities as had matured. It ought to have no such interpretation, for the public would then never know how officers were using the institution. The word, evidently, is used in its larger sense to signify and cover liabilities by the directors to the bank, whether matured or not. This (see Webster's Dictionary) is the general meaning of the word." So here, if all obligations not due can escape taxation, it would be easy for any person owning personal property to put it in such shape that it would be exempt.

The learned counsel for the assessors insists that the writ should be quashed for not clearly stating the grounds of complaint; also for being too broad. It clearly states the complaint so far as it concerns personal property, which is now the only question urged. If it sets out other grounds, not material to the questions involved, it is not apparent that there is any good reason for quashing the writ.

It is also urged by the assessors' counsel that at the time of the assessment there was enough rent past due, including other personal property, to equal the assessment. This is denied by the relator's counsel. An examination of

the evidence fails to show which of the learned counsel is approximately right. The reason why those matters were not clearly proved was obviously the result of the controversy being upon other grounds. The real questions in dispute were the object of the relator in taking deeds of land, and making leases, and as to whether they were taxable as to rent not matured.

The assessors' counsel also claims that the option to purchase has been exercised in certain cases by the lessees, and that from such times it became a contract to sell the land. This part of his contention is based upon certain indorsements on the leases, indicating greater payments than the amount due for rent. It was probably the intention, in all cases, that the option would be exercised, but the proof fails to show that it actually was, or that the question was either considered by the assessors, or determined by them.

It is also insisted by the counsel for the assessors that an affidavit is now of no importance, as an examination is allowed. Formerly an affidavit was the only proof. It was discovered that it might be misleading or erroneous as to material facts; therefore proof was authorized. The ordinary way still is to make an affidavit. Then, if the assessors are not satisfied, proof may be taken.

It is also manifest that in collecting material for making an assessment the assessors may avail themselves of such information by inquiry, and otherwise, as they can obtain. Then, if the party assessed claims that injustice has been done, he may file his affidavit, and the assessors may afterwards examine.

As an assessment is in the nature of a judgment, it is presumed to be correct until the contrary is shown; but if it appears that it was based upon an erroneous principle, like a wrong application of the law, their determination cannot be upheld. It is a familiar rule that error in the application of the rules of law requires the reversal of the judgment. *Brown* v. *Penfield*, 24 How. Pr. 64, 70.

Chapter 269, p. 402, § 6, of the Laws of 1880, provides that "costs shall not be allowed against assessors or other officers whose proceedings may be reviewed under this act, unless it shall appear to the court that they acted with gross negligence, in bad faith, or with malice." There is no ground for claiming that the assessors acted otherwise than in good faith. The assessment for personal property must be stricken from the roll, but without costs. The above suggestions will enable the assessors to act without difficulty in future cases.