Staunton.

UNION TANNING COMPANY V. COMMONWEALTH.

September 19, 1918.

1. TAXATION—*Foreign Corporations—Capital.*—The omitted capital of a foreign corporation employed in business in Virginia as of February 1, 1908, to 1915, inclusive, was legally assessable for taxation in Giles county in 1916, where it appeared that it maintained a place of business in Giles county, and in its return taxes for 1916 listed all of its capital stock employed in business in Virginia as assessable for taxation at Narrows in Giles county, although the company was engaged in business at three places in Virginia and there was no express proof as to in which of these places the principal office of the company was located.

2. TAXATION—*Omitted Property—Foreign Corporations—Capital.*— The capital of a foreign corporation doing business in Virginia is intangible personal property and as such has been assessable and taxable in Virginia since long prior to 1908, under the statute law of Virginia.

3. TAXATION — *Foreign Corporations — Capital — Situs.*—The legal *situs* of intangible personal property—*i. e.*, the capital—of corporations, both foreign and domestic, taxable in this State, for the years 1908 to 1916, inclusive, in question, was and is fixed for current yearly assesments, by section 492 of the Code of 1904, which provides that the intangible personal property not otherwise taxed of *all* corporations "shall be listed to the corporation by the principal accounting officer and *at the principal place of business* of the corporation * * *"

4. TAXATION—*Foreign Corporations—Business Domicile—Principal Place of Business.*—The words *principal place of business* in Code of 1904, section 492, providing that the intangible personal property not otherwise taxed of *all* corporations shall be listed to the corporation *at the principal place of business* of the corporation, and the words *business domicile,* used in Acts 1916, page 660, in designation of the *situs* of intangible personal property of foreign corporations for assessment for taxation have the same meaning and there is no conflict between the statutes.

5. TAXATION—*Intangible Personal Property—Situs.*—It is only in the absence of statute on the subject that the rule with respect to the *situs* of intangible personal property following the domicile of its owner applies. The legislature has plenary power to provide that such property of a non-resident corporation (and of non-resident natural persons) shall be assessable for taxation at any place or places it may designate, regardless of the true domicile of the corporation or person taxed. By such designation it makes such place or places the quasi-domicile— *i. e.,* the domicile for purposes of taxation in this State—of such corporations or natural persons. It gives to such quasi-domicile the same effect *quoad* purposes of taxation as if it were the true domicile.

6. FOREIGN CORPORATIONS—*Domicile—Principal Place of Business.*— A foreign corporation doing business at more than one place in the State has the option to make a *bona fide* choice, *ante motam litem,* of any one of such places, as its principal place of business in this State, just as a natural person with more than one place of residence has the option to make any one of them his domicile. Equally, the *locus* of the domicile (quasi-domicile in the former and actual domicile in the latter case) is a matter of act and intention. Both must concur to fix the domicile.

7. FOREIGN CORPORATIONS—*Domicile—Principal Place of Business— Intention of Corporation.*—Given the existence of the actual doing of business by a foreign corporation at a particular place in the State, its intention or *animus,* on the subject is decisive. If it so intends, that intention, together with the concurrent existence of the actual doing of such business at such place, is decisive, and fixes that place as the principal place of business of the corporation in this State.

8. FOREIGN CORPORATIONS—*Domicile—Principal Place of Business— Intention of Corporation.*—If there is a statute prescribing how the intention of a foreign corporation to fix its principal place of business at a certain place shall be manifested, the statute is conclusive on the point, but section 1104, Code of 1904, requiring foreign corporations to have an office in the State at which claims may be audited, settled and paid, and to designate an agent upon whom process may be served, does not require a foreign corporation to set forth where its principal office in this State is located.

9. FOREIGN CORPORATIONS—*Domicile—Principal Place of Business— Intention of Corporation.*—As in this State a foreign corporation is not required by statute to declare where it intends its principal place of business to be, the courts must ascertain whether such intention exists or existed at any particular time

or as to any particular place by evidence, which may be furnished by facts and circumstances touching the action of the corporation which may disclose the existence of such intention. The courts have often the same duty to perform in deciding upon the domicile of natural persons. No advance declaration on the subject has as yet been required of them by statute.

10. FOREIGN CORPORATIONS—*Domicile—Principal Place of Business—Intention of Corporation—Case at Bar.*—The fact that in the instant case the company made its return in 1916 in Giles county for the taxation at Narrows in such county, of all of its capital employed in business in Virginia, outside of that county as well as within it, was equivalent to a declaration by it that its intention or *animus* was that Narrows in such county was, as of February 1, 1916, the *situs* for taxation of all of such capital; and in the absence of any evidence that such intention was one newly formed by the company, the inference is warranted that such intention was not newly formed in 1916, but existed in former years, and that Narrows in Giles county was for such years, as well as 1916, the principal place of business or business domicile of the company, and the legal *situs* of all its capital for taxation in this State.

11. TAXATION — *Erroneous Assessment — Correction — Burden of Proof.*—The burden of proof is upon an applicant for the correction of an alleged erroneous assessment of taxes under Code of 1904, section 568. After the making of the assessment and the jurisdiction of the assessing officer who made it has been proved, the burden is not on the State or local subdivision to show by affirmative proof the existence of the specific items embraced in the assessment and the fair cash value thereof.

12. TAXATION—*Assessment—Officers Act Judicially.*—Assessing officers act judicially in deciding when property is taxable and in placing a value upon it, but unlike regular judicial tribunals they are not confined to the consideration only of matters established before them in accordance with the general rules of evidence. They act and are required by statute, indeed, to act upon their own knowledge, or upon any means of information they may have, that is, upon their own opinion based upon such information as they may have; and although it is their duty to receive and they should not arbitrarily disregard the lists of the returns and statements of property owners, they are not bound thereby.

13. TAXATION—*Assessment—Inquisitorial Powers of Assessors—Presumption in Favor of Assessment.*—Though assessing officers have many inquisitorial powers of a drastic nature, under the statute law of Virginia, they are not required to exhaust

all of those powers before they can make an assessment. If the *situs* of the subject of the tax is within the jurisdiction of the assessing officer, he has jurisdiction to make the assessment, and the assessment is presumed to be legal and valid in all respects, until the contrary is affirmatively shown. In such case, so far as the ascertainment of the subject of the assessment and its value is concerned, the assessing officer is required only to act in good faith in forming his opinion upon such information as he may have to go upon, however meagre.

14. TAXATION—*Erroneous Assessment—Submission to Jurisdiction of Court.*—An applicant to a court for the correction of an alleged erroneous assessment of taxes against him, submits himself to an equitable jurisdiction which the court exercises in such cases to ascertain and impose upon him an assessment of all the taxes with which he is assessable in the jurisdiction of the taxing power drawn in question.

15. TAXATION—*Erroneous Assesment—Issue Before Court.*—The issue tendered by an application for the correction of an alleged erroneous assessment of taxes is not the narrow one of whether this or that item of the assessment is illegal or erroneous; but whether the taxpayer seeking relief has been assessed with more property or at a greater valuation than is legally assessable against him in the jurisdiction involved. Only by making a full disclosure of all his property in question assessable in such jurisdiction and the appearance from such proof that the assessment as a whole is illegal or erroneous, can the applicant overturn the whole assessment. This is true of cases involving current assessments, as well as of assessments of omitted taxes.

16. TAXATION—*Omitted Taxes—Erroneous Assessment—Burden of Proof—Acts 1916, page 826, paragraph 7—Retroactive Statute.*—The statute on the subject of omitted taxes, which was in force when the assessment complained of in the instant case was made in 1916 (Acts 1916, page 826, paragraph 7), provides that in contested cases the burden of proof shall be upon the taxpayer to show that he has made a full disclosure. The omitted taxes were for the years 1908 to 1915. Under this statute the assessment complained of was made, and the case arose after the statute was in force.

*Held:* That this statute applied to the instant case.

17. TAXATION—*Erroneous Assessment—Full Disclosure by Applicant.*—In the instant case the company did not make a full disclosure of its capital assessable for taxation in Giles county, and failed to show by its evidence introduced in the trial court, nor did it otherwise appear from any evidence therein, that any items of the assessment complained of were illegal or erroneous in any particular. Therefore, there was no evidence in the

instant case to rebut the *prima facie* case made by the assessment complained of, as to the whole or as to any of the items of assessment therein made. Hence, the mere absence of further proof on behalf of the defendants can avail the said company nothing.

18. TAXATION—*Omitted Taxes—Evidence Before Examiner of Records.*—The fact that the examiner of records had no evidence before him at the time he made the assessment, in question, of the exact total amount of the omitted capital to be assessed or of the specific items of it, or of what proportions of it were being employed at the several places of business of the company in the State of Virginia, but arrived at the amounts he assessed merely from the opinion he entertained that the company employed in its business during the preceding years in question no less amount of capital than it returned for taxation in 1916, and from a comparison of the assessments made against said company in Giles county for the preceding years in question with its return for taxation made by it in 1916, did not invalidate the assessment.

19. TAXATION—*Due Process of Law—Property Valued Higher than Other Like Property.*—A systematic, intentional discrimination, by those administering the tax system of a State (whether as directed by statute or contrary to statute), against a person, by an assessment, of the property of such person at a higher rate of valuation than that applied to the same kind of property of other persons whose property is taxed in the same jurisdiction, is a denial to such person of due process of law and the equal protection of the laws guaranteed to him by the State and federal Constitution.

20. TAXATION—*Due Process of Law—Property Valued Higher than Other Like Property.*—But where there has been no discrimination between persons or classes of persons, but the property of the like kind of all persons in a given jurisdiction has been under-valued in its assessment for taxation contrary to law, a correction made of such assessment of any individual property owner according to law, is not a violation of the constitutional provisions as to due process of law or the equal protection of the laws, and evidence in a proceeding to correct an erroneous assessment that the property was assessed on a higher scale of valuation than other like property was properly excluded.

21. TAXATION—*Omitted Taxes—Correction of Assessment—Code of 1904, section 508, Amended by Acts 1916, page 826, paragraph 7.*—Code of 1904, section 508, amended by Acts 1916, page 826, paragraph 7, which provides that where the taxpayer has made a full disclosure of his taxable property, an assessment made

in good faith, although under a misapprehension of the law, shall be final as to valuation, has no application to a corporation which failed to make a full disclosure of its taxable property.

22. TAXATION—*Omitted Taxes—Interest.*—The assessment of omitted taxes in the case at bar having been made when act of 1916, page 826, was in force, which contained no provision giving discretionary powers to the assessing officer, or to the court, on the subject of interest (the omitted property not having been voluntarily reported for taxation on or before August 1, 1916, as provided for in section 3 of such statute), as did section 508 of the Code of 1904 as it at one time existed prior to its amendment by the enactment in 1916, the taxes in question must bear interest.

Error to a judgment of the Circuit Court of Giles county, on a motion to correct an erroneous assessment. Judgment for the Commonwealth. Plaintiff assigns error.

*Affirmed.*

This is a proceeding which originated in the court below upon the application of the plaintiff in error, the Union Tanning Company (hereinafter referred to as "company"), under the statute in Virginia (sections 567, 568, Code), for relief from an assessment for taxation made on November 11, 1916, by the examiner of records of the district including Giles county, of omitted capital of said company for the years 1908 to 1915, inclusive, and interest thereon.

There were certain pleadings in writing (which although unnecessary in a proceeding under said statute were permissible), and certain action of the court below thereon, not necessary to set forth in detail here, after which certain testimony was heard by the trial court, *ore tenus,* introduced in behalf of the defendants and the said company, respectively. Whereupon, as is certified in the record,—

" *  *  the court upon consideration of the pleadings and the evidence was of opinion and so decided,—

"First. That the intangible personal property of the said Union Tanning Company, à corporation, referred to in the said petition is assessable in Giles county; and

"Second. That the fact that it may have been assessed at the same proportion of its value as that of property of the same class belonging to other citizens of Giles county for the years 1908 to and including the year 1915 is not material; and

"Third. That the court is of the opinion that the said Union Tanning Company did not make a full disclosure for the years named; and

"The petition was dismissed, the relief prayed for was refused and a judgment entered against the plaintiff for the cost, to which judgment and decision of the court the plaintiff then and there excepted."

The said company brings error.

## THE MATERIAL FACTS.

The said company is a foreign corporation, chartered and organized under the laws of the State of New Jersey and was engaged in business in the State of Virginia on the 1st of February of the years 1908 to 1916 inclusive. The business of the company was that of tanning leather, *i. e.*, manufacturing leather from hides by certain processes in which bark from the wood of certain kinds of trees was used.

The company was engaged in such business during said time at three places in the State of Virginia, namely, at Narrows, in Giles county, at .........., in Wise county, and at Iron Gate, in Alleghany county.

There is no express proof in the case as to what place in Virginia was the principal office of the company on February first of the years 1908 to 1915, inclusive, or on February 1, 1916.

The assessment aforesaid, made in 1916 in Giles county, by the examiner of records, was based on the capital of said company employed in business in the State of Virginia on February 1, 1916, according to its return for taxation for

that year, furnished by said company itself to a commissioner of revenue for Giles county for the district therein in which Narrows is located, at which place of business of such company is and has been located from February 1, 1908, to February 1, 1916, inclusive. Such return consisted of the answers of the company to interrogatories and the list of such capital therein furnished such commissioner of the revenue as required by law. Such capital, so listed by the company itself for taxation at the place of business of the said company at Narrows, in Giles county, as of February 1, 1916, for that year, consisted, not only of hides and bark located in Giles county on February 1, 1916, held for use in said business in such county, but also of intangible personal property (classed as capital under the statute law of Virginia) of the company employed in business outside of the county of Giles, elsewhere in the State of Virginia.

As the said company by its said return for the year 1916 listed all of its capital stock employed in business in Virginia as of the first of February of that year as assessable for taxation at Narrows in Giles county, the examiner of records assumed that that was the legal *situs* for the assessment for taxation of all of such capital for the preceding years 1908 to 1915, inclusive. Further, the examiner of records was of opinion that the total amount of the capital of said company employed in business in Virginia as of February first of the years 1908 to 1915, inclusive, was as much as was so employed on February 1, 1916, and hence compared the assessments which had been made against such company in Giles county for the years 1908 to 1915, inclusive, with its said return for assessment for the year 1916. In that comparison the examiner of records found that for the year 1908 said company was assessed in Giles county with a certain amount of "capital;" that for the years 1909 to 1915, inclusive, and respectively, it was assessed in such county with certain personal property as tangible personal

78

property which consisted of hides and bark used in the business of the company, which was in truth "capital" of the company; but comparing such assessments with the return aforesaid of the company of its capital for taxation for 1916, the examiner of records found that the company had been assessed in Giles county for the years 1908 to 1912, inclusive, with approximately $120,000 less property for each of such years (classed in 1908, and which should have been classed for the other of such years, as capital), than it returned for taxation in such county as capital in 1916 as aforesaid; and with approximately $130,000 less, for each of the years 1913, 1914 and 1915, of property which should have been classed as capital, than it returned for taxation as aforesaid in 1916. Accordingly, upon his opinion and assumption aforesaid, and without other evidence before him than that above mentioned, the examiner of records made the assessment aforesaid for the year 1916 of $130,000 for each of the years 1913 to 1915, inclusive, and $120,000 for each of the years 1908 to 1912, inclusive, as omitted capital of said company which should have been, but had not been, taxed by the State of Virginia or Giles county for those years.

It does not appear from the record, affirmatively or negatively, whether the said company made any returns or listed its capital, or any of it, employed in business in the State of Virginia elsewhere than in Giles county for any of the years aforesaid, or what was the full cash value of all the capital of said company legally assessable in Giles county, except as shown by the assessment complained of.

It does not appear from the record that the company made any return or listed any capital for taxation in Giles county for the year 1908; but it was assessed for 1908 in such county with "capital" employed in business in Virginia. The parol proof in this case shows that this consisted solely of certain hides and bark on hand and held by the company

on February 1, 1908, in Giles county for use in its business in such county; that such property was assessed at about $6,600 less than the cost of the hides and bark; and that no other raw materials on hand for use, or other capital of the company employed in the business of the company elsewhere in the State as of February 1, 1908, was assessed against it in Giles county for the year 1908.

It does appear that for the years 1909 to 1915, inclusive and respectively, the company did make its returns for assessment for taxation in Giles county. Such returns did not list any capital of the company for assessment as such, except for the year 1909, as hereinafter set forth. It appears from the evidence, however, that it understood at the time that its hides and bark on hand on February first of those years for use in its business was in truth capital and subject to taxation as such. But, as the aggregate tax rate of the State and county for those years was the same on tangible personal property as on the capital of such a company employed in its business in the State, at the suggestion of the commissioners of the revenue before whom such returns were made, the company listed, *as it claimed,* all of the hides and bark it had on hand in Giles county on February first of such years, respectively, for use in its business there for assessment for taxation as tangible personal property, the number of hides or the number of pounds of the bark, however, not being listed only the aggregate value of the bark being listed under item 9 of the interrogatories, the form of which (so far as material) was as follows:

"9. All felled timber, railroad ties, telegraph, telephone or electric light poles, piles, mine props, cord wood, hoop poles, staves and bark * * * of the fair cash value of * * *" (the word "bark" being written at the end of the printed language of the interrogatory for some years, and "bark and hides" in two instances); and such value of the hides for such years being listed under item 21 of the inter-

rogatories, the form of which, so far as material, was as follows:

"21. All other tangible personal property * * * not specifically enumerated in this or other schedules and not exempt from taxation, of the fair cash value of * * *;" without anything being added to the printed language of the interrogatory, except that for the year 1909 the word "hides" was written at the end of this printed interrogatory with the aggregate of the fair cash value of the hides for that year first inserted there, but then erased and inserted below under item 3, the form of which is as follows:

"3. The value of all capital of incorporated joint stock companies not otherwise taxed * * *."

That the items mentioned in the next above paragraph were most of them inserted in said returns by the commissioner of the revenue aforesaid, at the office of the said company at Narrows; that as a rule the "amount and value of the bark and hides" aforesaid were read to the commissioner of the revenue, at the time of the preparation of such returns, from the books of the company at Narrows, by employees of the company in charge of such books, and the figures of the aggregate values aforesaid were inserted in the returns, as aforesaid, by the commissioner of the revenue.

That no other capital of the said company employed in business in Virginia was listed in said returns for the years 1909 to 1915, inclusive, except said hides and barks in Giles county as aforesaid.

The testimony for the company is to the effect, "that there was no other property of any kind whatsoever there owned" (in Giles county) "by the Union Tanning Company for any of those years" (1908 to 1915, inclusive) "subject to taxation" (except certain tangible property about which there is no issue in this case) ; "that the finished product of the tannery was not kept at Narrows, nor sold from there, but

was shipped to Elizabeth, N. J., and other places north, where it was cut and marketed; that there was no bonds, notes, bills or accounts receivable at Narrows; that they did some business through the Iron Gate office; that there was twice as much bark, at greatly increased cost" (in Giles county) "in 1916, as there had been on the first day of February of any previous years; that there was a much larger amount of hides" (in Giles county) "at greatly increased price, more than twice as high, on account of the war * * *"

The testimony for the defendants disclosed, however, that the books of the company, for the years 1908 to 1915, inclusive, showed the number of hides and the number of pounds of bark it had on hand at Narrows, in Giles county, on February first of such years, and the cost prices thereof; and that the fair cash value thereof, if computed at the cost prices, exceeded, by many thousands of dollars, the respective valuation at which they were assessed for those years and the valuations at which they were returned by the company for assessment for the years 1909 to 1915, inclusive; though such discrepancies in valuation were not sufficient to make up the entire valuations of omitted capital assessed in 1916, as aforesaid. And the defendants introduced no evidence expressly showing that other capital of the company made up the residue of such valuations of the 1916 assessment.

The further facts to be considered in connection with the question of the location of the principal place of business or business domicile of said company in Virginia are the following:

The said company filed its power of attorney dated September 6, 1910, with the State Corporation Commission soon after that date, in pursuance of section 1104 of the Code of Virginia, as amended (see Pollard's Code, 1904, sec. 1104) and in subsequent years filed similar powers of attorney in which it made the following statements, to-wit:

" * * * having established *an* office in the State of Virginia, the same *to be* located at Iron Gate in said State, and desiring to transact business in the State of Virginia in conformity with the laws thereof;" and by such powers of attorney it constituted and appointed certain persons resident of Virginia and residing at Iron Gate, succeeding each other from time to time during the period following September 6, 1910, as agents and attorneys for such company for the State of Virginia, "upon whom all legal process against said company may (might) be served." (Italics supplied).

Prior to September 6, 1910, during the years 1908 to 1910, inclusive, and as of the first of February of such years, the said company had appointed by power of attorney alike filed and had its statutory agent upon whom all legal process against the company might be served, but such agent resided at Cadet in Wise county, Va.

The only evidence in the record as to the business done by the company at Iron Gate is that "It did some business through the Iron Gate office" (above quoted), and the fact, aforesaid, that this was one of the three places of business of the company in Virginia.

The court below refused to permit the said company to introduce certain testimony to the effect that there was a general under-assessment of all intangible personal property, (as well as of tangible personal property) in Giles county for taxation for the years 1908 to 1915, inclusive, below its fair cash value, and that the same under-assessment was made of the intangible personal property of said company assessed for taxation in Giles county for such years.

The case seems to have been tried in the court below upon the assumption that the assessment of omitted capital complained of, in so far as it embraced a part of such capital assessed and taxed in Giles county for the years 1908 to 1915, inclusive, was at a higher percentage of its fair cash

value than the current yearly assessment as made for those years, hence we may regard that as a fact in the case.

*W. B. Snidow,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General,* and *J. D. Hank, Jr., Assistant Attorney-General,* for the Commonwealth.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The assignments of error, upon the points saved in the proceedings in the court below, raise the following questions for our consideration, which will be disposed of in their order as stated below.

1. Was the omitted capital of the Union Tanning Company, employed in business in Virginia, as of February 1, 1908 to 1915, inclusive, legally assessable for taxation in Giles county in 1916?

This subject is wholly regulated by statute.

That such capital of a foreign corporation doing business in Virginia (as was true of the said company), is intangible personal property and as such has been assessable and taxable in Virginia since long prior to 1908, under the statute law of Virginia, is well settled. *Commonwealth* v. *United Cigarette Machine Co.,* 119 Va. 447, 455, 89 S. E. 935. The question of the *situs* of such property, of a foreign corporation doing business in this State at more than one place, for the purpose of its assessment for taxation in Virginia, has not heretofore, however, been presented to this court for decision, and it must be decided by the application of the statute law on the subject to the facts of the case. The latter question was not involved in the case last cited, and that decision did not pass directly upon such question.

The legal *situs* of intangible personal property—*i. e.,* the capital—of corporations, both foreign and domestic, taxable in this State, for all of the years in question, was and is fixed for current yearly assessments, by section 492 of the Code of Virginia, which provides that the intangible personal property not otherwise taxed of *all* corporations "shall be listed to the corporation by the principal accounting officer and *at the principal place of business of* the corporation \* \* " (Italics supplied). Va. Code, 1904, sec. 492. This statute has not been amended or changed in its phraseology, and, hence, was in force and fixed the *situs* for its assessment for taxation of all the capital of said company employed in business in this State on the first day of February for the years 1908 to 1916, inclusive, and was in force when the assessment complained of in the instant case was made. ·

The Acts of 1916, p. 655, at p. 660, having reference in the language presently to be quoted, not to domestic corporations, but to foreign corporations only, doing business in this State, uses the following language with regard to the *situs* of the intangible personal property—*i. e.,* the capital—of such corporations employed in business in· this State, for current yearly assessments, namely, that such property or capital is " \* \* hereby declared assessable within this State and at the *business domicile* of said nonresident \* \* corporation \* \* or its agent or representative." (Italics supplied). This act was also in force when the assessment complained of in this case was made.

The Acts of 1916, at pp. 827-8, containing section 508 of the Code, as amended, on the subject of the assessment of "omitted taxes, levies, etc.," so far as material to the point under consideration, provides as follows: " \* \* the examiner of records \* \* (is) \* \* hereby authorized, unless the assessment on intangible personal property \* \* for omitted taxes have (has) already been made, to

use the same methods  *  *  for the assessment  *  *  of all omitted taxes on intangible personal property  *  *  as are authorized to be used for the assessment  *  *  of current taxes  *  * " This act was also in force when, and it was under it that, the assessment complained of in the instant case was made.

Where, then, was the *principal place of business* or *business domicile* of said company in this State when the assessment of omitted capital complained of was made in 1916?

The company contends that the law will imply that its principal place of business in this State was at the place where its principal office in this State was located at the time in question; and the case of *Lloyd* v. *Lynchburg*, 113 Va. 627, 75 S. E. 233, is relied on to sustain that position.

That case involved a domestic corporation and, in construing said section 492 of the Code, held that the law will imply that the principal place of business of such corporation is at the place where its principal office is located. It is true that that holding resulted from the consideration that the domicile of a domestic corporation is, as a general rule, at the place where its principal office is located; and from the further consideration that, independently of statute, the intangible assets of a corporation—as of a natural person—having no *situs* of their own for purposes of taxation, follow and are assessable only at the domicile of the owner. Hence, that case is not directly decisive of the point that the same holding must be made with respect to the *locus* in this State of the principal place of business of a foreign corporation; for, accurately speaking, a foreign corporation can have but one domicile, as is true of a natural person, and it can have but one principal office, which is identical with its domicile, if it has such an office at all, and that, if it exists, must be located within the jurisdiction of the sovereign which created it. If a corporation or

natural person has its domicile in this State, it is not a non-resident, but a resident of this State. Therefore, a foreign corporation cannot have its true domicile or its principal office, in the sense that it is its true domicile, in this State. It is because its domicile is not in this State that it is a foreign corporation. However, while all this is true, nevertheless, since it is settled, as above stated, that the capital of a foreign corporation employed in business in Virginia is taxable in this State, and since section 492 of the Code fixes the *situs* of such capital for the purpose of its assessment for such taxation, it is manifest that the language, "the principal place of business," in said section 492, when applied to a foreign corporation, has reference to its principal place of business in this State, and where, for purposes of taxation, it will be considered as domesticated and to have a local habitation. That this is a correct construction of said section 492 becomes plain in view of the phraseology, "business domicile," used in the later statute (Acts, 1916, p. 655, at p. 660, above quoted) in designation of the *situs* of intangible personal property of foreign corporations for assessment for taxation. Both of such statutes are still in force. There is no conflict between them. They both mean one and the same thing when applied to foreign corporations.

That is to say, the whole subject is statutory if there is statute law governing the subject. It is only in the absence of statute on the subject that the rule with respect to the *situs* of intangible personal property following the domicile of its owner applies. The legislature has plenary power to provide that such property of a non-resident corporation (and of non-resident natural persons) shall be assessable for taxation at any place or places it may designate, regardless of the true domicile of the corporation or person taxed. By such designation it makes such place or places the quasi-domicile—*i. e.*, the domicile for purposes of taxation in this State—of such corporations or natural persons.

It gives to such quasi-domicile the same effect *quoad* purposes of taxation as if it were the true domicile.

Such being the effect of the statute, it follows, therefore, that, while not directly in point, the principle involved in the decision of *Floyd* v. *Lynchburg, supra,* would lead to the holding that the law will imply that the principal place of business of a foreign corporation doing business in this State is at the place where its principal office in this State is located. But if this be true, the question still remains—

Where was the principal office of the said company in Virginia located at the time the assessment complained of was made in 1916; and where in 1908 to 1915, inclusive?

We think there can be no doubt that a foreign corporation doing business at more than one place in the State has the option to make a *bona fide* choice, *ante motam litem,* of any one of such places, as its principal place of business in this State, just as a natural person with more than one place of residence has the option to make any one of them his domicile. Equally, the *locus* of the domicile (quasi-domicile in the former and actual domicile in the latter case) is a matter of act and intention. Both must concur to fix the domicile. But given the existence of the actual doing of business by a foreign corporation at a particular place in the State, its intention or *animus* on the subject is decisive. If it so intends, that intention, together with the concurrent existence of the actual doing of such business at such place, is decisive, and fixes that place as the principal place of business of the corporation in this State. And the same is true of the location of the principal office or business domicile in this State of a foreign corporation doing business therein, if it be regarded as domesticated for purposes of taxation in this State.

But how must the existence of such intention be manifested?

Independent of statute, it may be manifested in any of

the innumerable ways or forms which the action of incorporated companies may take.

If there is a statute prescribing how such intention shall be manifested, that of course, would be conclusive on the point.

The said company relies on section 1104 of the Code, (as given in Pollard's Code of Va., 1904) and its action in appointing its statutory agents, residing at Iron Gate (one of the places of business in this State of said company), under such statute, and the statements in the power of attorney, making such appointments from time to time, to-wit: " * * having established *an* office at Iron Gate * *" (italics supplied), as conclusive of the fact that said company, prior to the assessment of omitted capital aforesaid in 1916, had the intention that its *principal office* should be and was located at Iron Gate, and, hence, not at Narrows, in Giles county.

Said section 1104, so far as material, is as follows:

"Every incorporated company doing business in this State shall have an office in the State at which all claims against such company due residents of the State may be audited, settled and paid. Every such company * * * shall before doing business in this State, present to the State Corporation Commission * * a written power of attorney * * appointing some person residing in this State its agent, upon whom all legal process against the corporation may be served * * "

Such statute might have provided that the power of attorney therein mentioned should, or that a foreign corporation doing business in this State should in some other manner, set forth where its principal office in this State is to be located (as sec. 1105a, subsec. 2, cl. b, as given in Pollard's Code of Virginia, 1904, requires shall be stated in certificates of incorporation of domestic corporations), or where it is located; but it does not. It is silent on that sub-

ject. The office referred to in said section 1104 is an office for auditing and paying certain claims. Such an office need not be the principal office of the corporation. And as to the place of residence of said statutory agent on whom all legal process against the corporation may be served, that need not be the same as of the principal office of the corporation. There is no statute making the location of such claim auditing and paying office, or of the residence of such statutory agent, inseparable from the location of the principal office of the corporation. In the absence of such statutory requirement, the option and power of a foreign corporation doing business in this State at more than one place, to separate its business and yet choose one of such places as its principal office or principal place of business in the State, independently of the location of its claim auditing and paying office, or the residence of its statutory agents aforesaid, exists unrestricted.

It is important, it is true, for purposes of taxation, that the *situs* of the intangible personal property, or capital of foreign corporations employed in business in this State should be definitely fixed or be capable of being definitely fixed, so far as the *animus* or intention of the corporation is involved as an element of fact as aforesaid—as, for example, would be afforded by a statutory requirement that a declaration of such intention should be made by the corporation in some form and in some manner made to appear of record in advance of the yearly assessments for taxation. The State and the cities, towns and counties thereof are interested in such advance declaration being made and evidence of it being thus furnished. But the courts are powerless to supply such a requirement. The appeal therefor must be made to the legislative branch of the government. In the absence of action in this regard by that department of government, the courts must content themselves with ascertaining whether the element of intention

under consideration exists or existed at any particular time, or as to any particular place, by evidence which may be furnished by facts and circumstances touching the action of the corporation which may disclose the existence of such intention. The courts have often the same duty to perform in deciding upon the domicile of natural persons. No advance declaration on the subject has as yet been required of them by statute.

In the instant case, as aforesaid, we have not any express declaration of the said company, *ante motam litem,* of the place of location of its *principal office* in this State, to thereby conclude the question of the whereabouts of the location of its principal place of business or business domicile, *i. e.,* the *situs* of its aforesaid property or capital for taxation in this State. We must look to the evidence of other acts of the said company, therefore, for evidence of its *animus* in this particular.

Where the *animus* above referred to, however, is once ascertained to exist as to any particular time in connection with any existing place of business of said company, it is as conclusive of the whereabouts of the location of its principal place of business or business domicile, as of that time, as if such location were established by its designation of its *principal office* under statutory requirements.

The facts in this particular case, as shown by the record, which could in any aspect of it be deemed material, are set forth in the statement of the facts above and need not be here repeated. It is deemed sufficient here to say that we are of opinion that the single fact that the said company made its return in 1916 in Giles county for the taxation at Narrows in such county, of all of its capital employed in business in Virginia, outside of that county as well as within it, was equivalent to a declaration by it that its intention or *animus* was that Narrows in such county was, as of February 1, 1916, the *situs* for taxation of all of such

capital. In the absence of any evidence that such intention was one newly formed by said company—such as that for any former year it had returned such capital for taxation at one of its other places of business, or elsewhere in Virginia, or that there had been any material change in its business, or other evidence tending to show that at some prior time it had a different intention with respect to the location of its principal place of business, or business domicile, or the *situs* of such capital for taxation (and there is an entire absence of any such evidence in the record), we are of opinion that the court below was warranted in drawing the inference that such intention was not one newly formed in 1916, but had existed in former years, when the like character of business done by said company as in 1916 at Narrows was conducted by it there, to-wit, as of the 1st day of February, 1908 to 1915, inclusive, and that Narrows, in Giles county, was for such years, as well as for 1916, the principal place of business or business domicile of said company, and the legal *situs* of all of said capital for taxation in this State.

Hence we are of opinion that the omitted capital of said company employed in business in Virginia, as of February 1, 1908 to 1915, inclusive, was legally assessable for taxation for those years in Giles county in 1916.

2. After the making of the assessment and the jurisdiction of the assessing officer who made it have been proved, in a proceeding such as that before us, instituted by a taxpayer for relief from an alleged erroneous assessment, has the burden of proof, upon the State or local subdivision thereof which has attempted to exercise the taxing power, to sustain the assessment, been *prima facie* borne; or must it go further and sustain such burden by affirmative proof of the existence of the specific items embraced in the assessment and the fair cash value thereof; and if that additional proof is not produced, must the assessment *pro tanto,* be held to be illegal or erroneous?

We are of opinion that this question must be answered in the negative.

The statute (sec. 568 of the Code), being one of the sections of the statute under which the proceeding in the instant case was instituted, provides: " * * * if the court is satisfied that the applicant has been erroneously assessed with any taxes * * the court may order that the assessment be corrected."

Moreover, assessing officers act judicially in deciding when property is taxable and in placing a value upon it, but unlike regular judicial tribunals they are not confined to the consideration only of matters established before them in accordance with the general rules of evidence.

They act and are required by statute, indeed, to act upon their own knowledge, or upon any means of information they may have, that is, upon their own opinion based upon such information as they may have; and although it is their duty to receive and they should not arbitrarily disregard the lists of the returns and statements of property owners, they are not bound thereby. 1 Desty on Taxation, (1884 ed.), p. 541. And though they have many inquisitorial powers of a drastic nature, under the statute law of Virginia, they are not required to exhaust all of those powers before they can make an assessment. If the *situs* of the subject of the tax is within the jurisdiction of the assessing officer, he has jurisdiction to make the assessment, and the assessment is presumed to be legal and valid in all respects, until the contrary is affirmatively shown. 2 Desty on Taxation, p. 615; 37 Cyc. 990, 1251. In such case, so far as the ascertainment of the subject of the assessment and its value is concerned, the assessing officer is required only to act in good faith in forming his opinion upon such information as he may have to go upon, however meagre. Action in good faith is the only essential requirement under such circumstances. Desty on Taxation, p. 493. Errors of judg-

ment, mistakes of fact in making, or even that an assessment is made contrary to the evidence, do not vitiate the *prima facie* validity of the assessment. 2 Desty on Taxation, pp. 611-614. Like the judgment of a court having jurisdiction of the subject matter and of the parties, the determination of an assessing officer, evidenced by his return of his assessment in due form, of property having its *situs* for taxation in his territory, is *prima facie* correct and valid in all respects.

Hence, in a proceeding, such as that before us, should the proof in the case show that a particular item or items of the property assessed is erroneous or illegal, as to the quantity or value of the property assessed, or otherwise, that will entitle the applicant to the correction of the assessment in that or those particulars, but no farther. The taxing power rests secure upon the presumption aforesaid that the assessment is correct in all other particulars, until the contrary is shown in evidence.

That is to say, an applicant to the court for the correction of an alleged erroneous assessment of taxes against him, submits himself to an equitable jurisdiction which the court exercises in such cases to ascertain and impose upon him an assessment of all the taxes with which he is assessable in the jurisdiction of the taxing power drawn in question. (*Commonwealth* v. *Schmelz*, 114 Va. 364, 76 S. E. 905.) The issue tendered by such an application and made before the court is not the narrow one of whether this or that item of the assessment is illegal or erroneous; but whether the taxpayer seeking relief has been assessed with more property or at a greater valuation than is legally assessable against him in the jurisdiction involved. Where an assessment, such as aforesaid, is introduced in evidence in such a proceeding, it establishes in proof a *prima facie* case for the taxing power upon the whole issue. Hence, in the very nature of the case and of the issue before the

80

court, the applicant cannot overturn the effect of such *prima facie* proof beyond the items which may be reached by his proof. The items of the assessment not touched by his proof remain established in evidence by the assessment. The result is that, practically, only by making a full disclosure of all his· property in question assessable in such jurisdiction and the appearance from such proof that the assessment as a whole is illegal or erroneous, can such applicant overturn the whole assessment.

This is true of cases involving current assessments, as well as of assessments of omitted taxes. In both cases the evidence to overturn the *prima facie* case made for the taxing power by the assessment is peculiarly within the power of the taxpayer to produce, if the presumption arising from the *prima facie* case made be not correct. Hence, in the absence of the production of such proof by the taxpayer, such presumption becomes conclusive, in accordance with a well settled rule of evidence. 1 Wigmore on Ev., sec. 285, and authorities cited.

But, further, as to the burden of proof resting upon the applicant to the court for relief from omitted taxes (such as is the case before us) : The statute on the subject of omitted taxes, which was in force when the assessment complained of in the instant case was made in 1916 (Acts 1916, p. 826, par. 7, which will be hereinafter more fully quoted), so far as material to the point now under consideration, provides that " * * in contested cases" (such as is the case before us) "the burden of proof shall be upon the taxpayer to show that he has made a full disclosure."

The said company contends that this statute does not apply to the instant case, and that to hold that it does so would be to give it a retroactive effect; but we do not think that such position is well taken. It was under this very statute that the assessment complained of was made, and this contested case arose after the statute was in force.

Hence, we are of opinion that the rule of evidence aforesaid, prescribed by the statute, applies to and must govern this case.

The said company, on the trial of the case in the court below, did not make a full disclosure of its capital assessable for taxation in Giles county, as appears from the above statement of facts, which need not be repeated here. It also appears from such statement of facts that said company failed to show by its evidence introduced in the trial court, nor did it otherwise appear from any evidence therein, that any items of the assessment complained of were illegal or erroneous in any particular. Therefore, there was no evidence in the instant case to rebut the *prima facie* case made by the assessment complained of, as to the whole or as to any of the items of assessment therein made. Hence, the mere absence of further proof on behalf of the defendants can avail the said company nothing.

3. Did the fact that the examiner of records had no evidence before him at the time he made the assessment in question, of the exact total amount of the omitted capital to be assessed or of the specific items of it, or of what proportions of it were being employed at the several places of business of said company in the State of Virginia, but arrived at the amounts he assessed merely from the opinion he entertained that the said company employed in its business during the preceding years in question no less amount of capital than it returned for taxation in 1916, and from a comparison of the assessments made against said company in Giles county for the preceding years in question with its return for taxation aforesaid made by it in 1916 invalidate the assessment complained of?

We are of opinion that this question must be answered in the negative.

This conclusion follows from what is stated above. The examiner of records acted in this matter in the exercise of

judicial powers authorized by statute. It inhered in those powers as so authorized that he might make the assessment so that it would be *prima facie* valid although based on his opinion formed upon such partial and incomplete evidence as he had before him. Such evidence is, in every case of omitted taxes, left incomplete by the taxpayer himself. He is required by law to correctly disclose his property for taxation by his returns from year to year for its current yearly assessment. And by section 3 of the Acts of 1916, at p. 827, as to omitted taxes, he is given the opportunity (in such a case as that before us) to report the omitted property for taxation. The taxpayer fails to do either. We think that all the law requires of an assessing officer under such circumstances and under the other circumstances existing in the instant case (which are set forth in the statement of facts above) is, that he should act in good faith. Such officers are chosen for their integrity and the method of their appointment is relied on under our system of taxation to select such as will not by their action impose undue hardships upon taxpayers in moving the courts to correct such assessments. Errors and a consequent certain amount of such hardships are inseparable from any system of taxation. The legislature having adopted our present system, such hardships as result from its administration by the assessing officers, acting in good faith, must be borne by those affected; and for those affected by any *mala fides* of such officers, the law affords a redress, not only for the correction of the assessment, but also by action against the latter, personally and upon their official bonds. No suggestion of such *mala fides*, however, is made in the record in this case. And the failure of the said company to rebut the *prima facie* evidence afforded by the assessment, by a full disclosure of its capital subject to taxation as so assessed, which was peculiarly in its power to do, is convincing, and in this case, conclusive evidence

that the opinion and judgment of the assessing office in making such assessment was correct.

4. Was the court below in error in refusing to admit evidence, which, if admitted, would have shown that such of the intangible personal property or capital of said company as was assessed in Giles county in 1908 to 1915, inclusive, was asssessed at the same proportion of its fair cash value as that of property of the same kind belonging to all the citizens of Giles county during those years, and was assessed at a lower percentage of its value than the law required and than was made in the 1916 assessment complained of, and in holding that such facts were immaterial in this case?

In view of the conclusions reached above, this question could affect only the amount assessed against the said company in 1916 as omitted taxes for the years 1908 to 1915, inclusive, to the extent that the 1916 assessment was on a higher scale of valuation than was the current yearly assessment of 1908 to 1915, inclusive, as to so much of such capital as was included in the 1916 assessment.

(a). One position of said company on this subject is, in substance, that, to the extent above mentioned, the assessment of omitted taxes in 1916 for the years 1908 to 1915, inclusive, is an assessment of its property at a higher rate than has been assessed in Giles county against all other owners therein of the same kind of property during those years. That this has been a denial to said company of due process of law and of the equal protection of the laws, guaranteed to it by the fourteenth amendment of the Constitution of the United States; and the following authorities are relied on to sustain such position, viz: *Greene* v. *Louisville, etc., R. Co.,* 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917 E, 88; *Taylor* v. *Louisville, etc., R. Co.,* 31 C. C. A. 537, 88 Fed. 350.

An examination of these authorities discloses that it is

a systematic, intentional discrimination, by those adminising the tax system of a State (whether as directed by statute or contrary to statute), against a person, by an assessment of the property of such person at a higher rate of valuation than that applied to the same kind of property of other persons whose property is taxed in the same jurisdiction, which is condemned by such authorities and held to be a denial to the person first referred to of the due process of law and the equal protection of the laws guaranteed to him by the federal Constitution. This becomes more apparent from an examination of the many authorities on this subject, among which are the following, viz.: *German Nat'l Bank* v. *Kimball*, 103 U. S. 732, 26 L. Ed. 469; *Stanley* v. *Board of Supervisors*, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; *Coulter* v. *Louisville, etc., R. Co.*, 196 U. S. 599, 25 Sup. Ct. 342, 49 L. Ed. 615; *Albuquerque Nat. Bank* v. *Perea*, 147 U. S. 87, 13 Sup. Ct. 194, 37 L. Ed. 91; *Sunday Lake Iron Co.* v. *Township of Wakefield*, 247 U. S. 350, 38 Sup. Ct. 495, 62 L. Ed. —. But where there has been no discrimination between persons or classes of persons, but the property of the like kind of all persons in a given jurisdiction has been under-valued in its assessment for taxation contrary to law, for a correction to be made of such assessment of any individual property owner according to law, by an assessing officer, by a board of review, by a commissioner of court, by a court, or by any other legislatively authorized agency, means or instrumentality, does not fall under the ban of the authorities aforesaid relied on by said company; although it may be true that such correction may not be made as to all of the persons whose property has been thus under-assessed. If there be not a systematic, intentional discrimination between persons or classes of persons owning the same kind of property in the making or his correction of assessments, such action does not fall within the principle of the cases relied on by said

company as aforesaid. *State* v. *Hall*, 172 Ala. 316, 54 So. 563; *Magnolia Bank* v. *Board of Supervisors*, 111 Miss. 857, 72 So. 697. As said in one of the cases last cited, " 'the equal protection of the laws,' does not mean equal immunity in its violation or evasion," and, as pointed out in substance in both of such last cited cases, if, because a law for the assessment of property has been generally evaded by or not enforced for a time against owners of the same kind of property, until it has become a custom or rule among assessing officers to assess such property of all owners thereof at a certain percentage of and less than its fair cash value, instead of at its fair cash value, as the statute on the subject may require (as it does in Virginia), it were held that the legislature and the courts or other legislatively authorized agencies, are powerless to correct any one of such assessments, until and unless all of them are corrected, that would be, in effect, to allow violators of the law to repeal the law, or to beget a constitutional right in every evader of the law to plead immunity from its enforcement except upon condition that no other evader of it be allowed to escape from its requirements. There would be an end of all government of laws if such a rule of constitutional construction could prevail.

There is no evidence in the case before us that the making or correction of its assessment for the years in question, by the assessment against it of omitted capital as aforesaid for those years, was in pursuance of any discrimination against said company, as a class or a member of a class. Hence, there is no merit in the position of said company under consideration.

(b). Another position taken by said company on the subject next above mentioned, is that the correction of the assessments complained of would deny to it the equal protection of the laws guaranteed to it by section 168 of the

Constitution of Virginia, and the due process of law also guaranteed to it by section 11 of the same Constitution.

For the reasons stated above, in connection with the consideration of the same guaranties contained in the federal Constitution, we are of opinion that there is no merit in the last named position.

5. Was said company shielded by the bar of the statute, (sec. 508 of the Code, as amended by Acts, 1916, p. 826, par. 7)', from an increase in valuation by the assessment in 1916 aforesaid of any of the intangible personal property or capital of said company thereby assessed, which was assessed and undervalued in the current annual assessments of it in the years 1908 to 1915, inclusive?

The statute mentioned in this question, so far as material, provides as follows:

"In case of omitted taxes, wherever the taxpayer has made full disclosures of his taxable property * * * as (has) enumerated on his returns the items thereof, and there has been an assessment made in good faith by the tax officer, although made under misapprehension of the law, such assessment, as to valuation, shall be final; but in cases in which there has not been a full disclosure and enumeration of his intangible personal property * * * whether intentional or otherwise, such assessment shall not be considered final, but in contested cases the burden shall be upon the taxpayer to show that he has made a full disclosure."

As appears from the facts of this case, set forth in the above statement of them, the said company made no return for the year 1908; its returns for the years 1909 to 1915, inclusive, did not enumerate the items of bark or hides composing its intangible property listed on such returns, but gave only what was listed as the aggregate fair cash values thereof for the respective years. As appears from the above statement of facts, the evidence in the record is

that the only information on the subject given by the company to the commissioners of the revenue to whom such returns were made and who made such assessments was, "the amount and value of the bark and hides" aforesaid, read from the books of the company, and that the commissioners of the revenue, as a rule, inserted the figures of the aggregate values thereof aforesaid which appear in said returns. This evidence is obscure as to whether the number of hides or the pounds of bark were read to the commissioners of the revenue from the books of the company, or just what "amount" or what "value" was so read. We do not think that such character of proof is sufficient to show that there was "a full disclosure" of such bark and hides to the commissioners of the revenue. Certainly the "items" of them were not "enumerated on * * (the) returns," as stipulated in the statute. They were not exhibited before the commissioner of the revenue, or left to him to value upon a physical view of them by the latter. Further, there was no disclosure made to the commissioners of the revenue, or other assessing officer, or in court, of any intangible personal property of said company employed in business elsewhere in Virginia than in Giles county, which upon the record in this case we must infer existed and was assessable for taxation in Giles county for the years 1908 to 1915, inclusive, as above stated. This was a failure to make "a full disclosure," and such omission of disclosure was alone sufficient to deprive said company of the benefit of the bar of the statute in question; for such statute provides that "in cases where there has not been a full disclosure * * of his (the tax-payer's) * * intangible personal property * * whether intentional or otherwise, such assessment shall not be considered final * * *." Such disclosure might have been made by the said company in any of the three ways and at any of three times, at least, namely: (a) By its returns for the current yearly assess-

81

ment for taxation of its capital employed in business in Virginia; (b) by voluntary report of omitted property on or before August 1, 1916, pursuant to the statute on this subject above mentioned: and (c) by evidence on the trial in the court below. And the said company did not make such disclosure at any of those times, or in any of these ways, or in any other way, so far as appears in evidence.

Therefore, the question under consideration must be answered in the negative.

The sole question raised by the assignments of error remaining for our consideration, which has not been disposed of by our conclusions above stated, is the following:

6. Should the taxes, imposed as aforesaid in this case, bear interest?

The assessment in question having been made when said Act of 1916, p. 826, was in force, which contained no provision giving discretionary powers to the assessing officer, or to the court, on the subject of interest (the omitted property not having been voluntarily reported for taxation on or before August 1, 1916, as provided for in section 3 of such statute), as did section 508 of the Code as it at one time existed prior to its amendment by said enactment in 1916, the taxes in question must bear interest.

In the case of *Commonwealth* v. *United Cigarette Machine Co., supra,* 119 Va. 447, 89 S. E. 435, cited and relied on by said company on the question under consideration, the assessment of omitted taxes involved was made before said 1916 amendment. of said section 508. In the instant case, the assessment in question was made under such statute as it stood after such amendment. Hence, the assessing officer had not, nor did the court below have, any discretion as to interest.

For the foregoing reasons, we are of opinion that there was no error in the action of the court below complained of, and its judgment will be affirmed.

*Affirmed.*