## Staunton.

## LOYD CORPORATION V. COMMONWEALTH.

### September 17, 1919.

1. TAXATION—*Assessment—Undervaluation—Full Disclosure by Taxpayer—Case at Bar.*—A corporation whose assets consisted wholly of choses in action furnished the commissioner of revenue a complete itemized list of its stocks, bonds, and other property liable to taxation, and answered every question put to it by the commissioner. The list, however, did not affix any values to the several stocks listed, though it named the several companies in which the stock was held, and correctly stated the number of shares of stock held in each, and the corporation furnished the commissioner with information from which he could have readily ascertained the fair value of the stocks for the purpose of assessment. The Commonwealth contended that it was as much the duty of the corporation to give the value of the stocks as it was to give the names of the companies and the number of shares held in each, and that, having failed to do so, the corporation had not made a "full disclosure" of its assets, and therefore was not entitled to the benefit of section 508 of the Code of 1904, as amended by the act of March 22, 1916 (Acts 1916, p. 826), which provides in the case of omitted taxes, that wherever the taxpayer has made a full disclosure of taxable property, and the items thereof, and there has been an assessment in good faith by the tax officer, although made under a misapprehension of law, such assessment as to the valuation of such property shall be final.

   *Held:* That the corporation had made a full disclosure of its taxable property within the meaning of the statute, that the assessment thereof was made in good faith, although some of the stocks were undervalued, and therefore the valuation thereof by the commissioner was final and could not be disturbed.

2. TAXATION—*Valuation of Property—Duty of Citizen and Commissioner.*—While it is the duty of the citizen to return a list of his personal property and the value thereof, it is made the duty of the commissioner by section 491 of the Code (1904) to call upon him for such list, and if he neglects or refuses to

give it, the commissioner is given ample power and authority by that section to obtain the needed information from other sources.

3. TAXATION—*Valuation—Return where there is no Change in Value.*—Where property was valued for taxation by a commissioner of revenue and there was no change in the value of the property in subsequent years, in the absence of any evidence to the contrary, the owner of the property had the right to assume that the commissioner would place the same value on the property in the subsequent years that he placed on it when first listed, and valuations so made by the property owner become the valuations of the commissioner when accepted by him and placed on the tax list. He was not bound by the valuations submitted by the property owner, and if not satisfied with them he should have placed a proper valuation thereon.

4. STATUTES—*Construction—Proviso.*—If there is conflict between the body of a statute and a proviso, then the proviso must prevail, as the later expression of the legislative intent.

Error to a judgment of the Circuit Court of Washington county on a motion to correct an erroneous assessment. Judgment for the Commonwealth. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*F. S. Kirkpatrick* and *J. Irby Hurt,* for the plaintiff in error.

*Jno. R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *F. Briggs Richardson,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

[1] The Loyd Corporation made a motion before the Circuit Court of Washington county to be relieved from an assessment of omitted taxes for the years 1910 to 1914, both inclusive, which it alleged to be erroneous. The court

relieved it of the taxes for the year 1910, but refused to relieve it for the other years. To this action of the court the corporation excepted, and its action is brought under review by this writ of error.

The Loyd Corporation was chartered in 1910, with its chief office at Abingdon, in Washington county. Its assets consisted wholly of choses in action which had belonged to the estate of William H. Loyd, deceased, which had been previously listed for taxation in the city of Lynchburg, where Loyd resided at the time of his death. The company had been chartered as a holding company to keep together the estate of the decedent. The assets turned into the company consisted of stock in the banks of Lynchburg, stock of the Western Union Telegraph Company, stocks in sundry coal companies, and bonds and notes of private persons for money loaned them. These coal stocks were very closely held, and it could hardly be said that they had a market value, but in the organization of the company they were listed at prices much in excess of any sales that had been made thereof.

In January, 1910, S. M. Loyd, the president of the company, went to Abingdon and interviewed the commissioner of the revenue, with reference to furnishing him a list of the assets of the company for taxation. This interview lasted over two hours, and Loyd furnished the commissioner a complete itemized list of all the stocks, bonds and other property liable to taxation, and answered every question put to him by the commissioner. This list, however, did not affix any values to the several stocks listed, though it named the several companies in which stock was held, and correctly stated the number of shares held in each. There is no controversy here over the values placed upon any of the property except the coal stocks. The bonds and notes above mentioned were listed at their face value. The com-

6

missioner was informed by Mr. Loyd that Mr. Snead, the commissioner in the city of Lynchburg, could give the proper amounts at which the bank stock should be assessed, and this information was obtained from Mr. Snead and the bank stock was listed accordingly. Loyd informed the commissioner that he did not know the value of the Western Union stock, but thought it was selling for about seventy. He said, however, that the stock was listed on the New York stock exchange, and he could ascertain its value from almost any daily paper. The commissioner listed this stock at fifty. There is a conflict of testimony as to what took place with reference to the valuation of the coal stocks, but the preponderance of the testimony is that Loyd told the commissioner that Mr. Snead, the commissioner in Lynchburg, had assessed some of these stocks at over $200 per share. The commissioner listed one group of them at $50 per share, another at $75 per share, and two others at $100 per share, and asked Loyd if these values were satisfactory, and he replied that they were. The par value of these stocks was $100 per share, and the actual values of most of them not less than $250 per share. The stock of the Western Union Telegraph Company was worth at least $70 per share, but was listed by the commissioner at $50 per share. Tangible personal property of other persons was listed at about three-fourths of its value. For the years subsequent to 1910 no further conferences were held with the commissioner, but each year the Loyd Corporation furnished the commissioner written lists of the number of shares of stock held by it in these same coal companies, annexing the same values to each that the commissioner had annexed to them in 1910. It does not appear that there was any change in such values during the years mentioned. Subsequently, the examiner of records for the district listed these stocks for omitted taxes for the years 1910 to 1914, both inclu-

sive, and in this list he valued the Western Union stock at $71.50 per share and increased the assessment on nineteen shares of coal stock from $50 per share to $75 per share, and eighty shares from $100 a share to $200 a share, and fifty shares from $100 a share to $250 a share, and one hundred shares from $75 a share to $250 a share. These were the changes made for the year 1910. In the subsequent years the lot of one hundred shares had been listed by the corporation at par. It is not claimed that the valuations of the examiner are excessive.

It is not claimed by the Commonwealth that the Loyd Corporation has concealed any of its assets, or that it has failed to furnish a complete itemized list thereof. The entire controversy arises over the valuation of the four groups of coal stocks. The Commonwealth contends that it was as much the duty of the corporation to give the value of these stocks as it was to give the names of the companies and the number of shares held in each, and that, having failed to state the full cash value thereof, the corporation has not made a "full disclosure" of its assets, and hence is not entitled to the benefit of section 508 of the Code, as amended by act of March 22, 1916 (Acts 1916, p. 826). The president of the corporation told the commissioner that he did not know the value of the stocks, as they were not quoted on any market and were closely held, and, as already stated, the preponderance of the testimony is that he told the commissioner that some of them had been assessed by the commissioner in Lynchburg at over $200 a share. We think it also sufficiently appears that the commissioner knew that these stocks formerly belonged to a citizen of Lynchburg and had been there listed by a commissioner of the revenue who stood very high in the estimation of the taxing officers of the State.

[2, 3] While it is the duty of the citizen to return a list

of his personal property and the value thereof, it is made the duty of the commissioner, by section 491 of the Code (1904), to call upon him for such list, and if he neglects or refuses to give it, the commissioner is given ample power and authority by that section to obtain the needed information from other sources. The commissioner could readily have gotten the value of the Western Union stock, as he admits, from the newspapers circulating in his home town, and, according to the preponderance of the testimony, he was furnished with information from which he could have readily ascertained the fair value of the coal stocks for the purpose of assessment. He did not consult either. The circuit court exonerated the corporation for the year 1910, but refused exoneration for the other years. If the corporation was entitled to exoneration for 1910, we do not perceive any good reason why it was not also entitled to exoneration for the other years. There was no change in the value of the stock, according to the testimony, between 1910 and 1914, and if it was correctly valued in 1910 it was correctly valued for the other years. In the absence of any evidence to the contrary, the officers of the corporation had the right to assume that the commissioner would place the same value on the stocks in the subsequent years that he placed on them in 1910, and the valuations submitted by the corporation became the valuations of the commissioner when accepted by him and placed on the tax list. He was not bound by the valuations submitted by the corporation, and if not satisfied with them he should have placed a proper valuation thereon. As said in *Union Tanning Co.* v. *Commonwealth*, 123 Va. 610, 96 S. E. 780, commissioners of the revenue "act and are required by statute, indeed, to act upon their own knowledge, or upon any means of information they may have; that is, upon their own opinion based upon such information as they may have; and although it

is their duty to receive and they should not arbitrarily disregard the lists of the returns and statements of property owners, they are not bound thereby."

The Commonwealth makes no charge of fraud against either the commissioner or the officers of the corporation, but only that these coal stocks were assessed at "less than the law required." At the first interview the president of the corporation had not asked or suggested a low assessment, but only that his company be treated as other citizens. The commissioner was pleased that the corporation had selected Abingdon as its home office, and readily agreed that such treatment should be accorded. All other personal property in the district, except loans of money, was assessed at much less than its actual cash value, and the commissioner, without adequate investigation and inquiry, assessed the stocks at far below their cash value. The president of the corporation naturally acceded to his valuations and said they were acceptable. The taxes at these valuations were regularly paid from year to year, and it only remains to inquire whether, under these circumstances, there has been that "full disclosure" which entitled the corporation to the benefit of the provisions of section 508 of the Code (1904) as amended.

Section 508 of the Code (1904), as amended by the act of 1916 (Acts 1916, p. 826), is as follows: "If the commissioner of the revenue * * * ascertain that any person, or any real or personal property, or income, or salary, or license tax, has not been assessed for taxation for any year by the State, county, district, city or town, or *that the same has been assessed at less* than the law required for any year * * * it shall be the duty of the commissioner of the revenue * * * to list the same, and assess persons, property (real, personal and mixed) and levies at the rate prescribed for that year, adding thereto interest at the rate of six per centum per annum, provided, however * * *.

"7. In the case of omitted taxes, wherever the taxpayer has made full disclosures of his taxable property (real estate, tangible or intangible personal property, money and income), and in cases of tangible and intangible personal property, money and income, as enumerated on his returns the items thereof, and there has been an assessment made in good faith by the tax officer, although made under misapprehension of the law, such assessment as to the valuation of such property shall be final; but in cases in which there has not been a full disclosure and enumeration of his tangible and intangible personal property, income and money, whether intentional or otherwise, such assessment shall not be considered final, but in contested cases the burden shall be upon the taxpayer to show that he has made a full disclosure."

[4]   The first part of this section down to the proviso is substantially the same as it was before amendment, so far as it affects the question here at issue. But it is manifest that the legislature intended to make very substantial changes in the law in the interest of the taxpayer. It is a matter of common knowledge that personal property of all kinds had for years been assessed at less than its actual cash value, and it was the purpose of the legislature to make the question of values returned by the commissioner final in cases within the purview of proviso 7 above quoted. The substance of that proviso is that in case of omitted taxes, wherever the taxpayer has made a full disclosure of his taxable property, and the items thereof, and there has been an assessment in good faith by the tax officer, although made under a misapprehension of law, such assessment as to *the valuation of such property shall be final.* In the case at bar, it is admitted that the corporation did furnish the commissioner a complete list of all of its property "and the

items thereof," but it is claimed that the statute is inapplicable because the list did not give the actual cash value of each item. If the list furnished had given the actual cash value of the stocks, there would have been nothing to correct, and to hold that the statute was only applicable to that class of cases would be to render the statute wholly nugatory in that respect. It is true that the first part of the section, which was the old law, does provide that if the commissioner or examiner of records shall ascertain that any property "has been assessed at less than the law required for any year," it shall be his duty to list the same at the rate prescribed for that year, adding interest at six per cent, and there may be cases falling within these terms and not within the terms of proviso 7 (a question not now decided), but if there is conflict between the two, then the proviso must prevail, as the later expression of the legislative intent. We are of opinion, however, that the Loyd Corporation made a full disclosure of all of its taxable property, and of the items thereof, for the years 1910 to 1914, both inclusive, within the meaning of the statute, that the assessment thereof was made in good faith, and that therefore the valuation thereof by the commissioner is final and cannot now be disturbed.

In *Union Tanning Company* v. *Commonwealth, supra,* omitted taxes from 1908 to 1915 were assessed, and it appeared that no return of any kind was made for the year 1908, and that for the years 1909 to 1915, inclusive, the returns "did not enumerate the items of bark or hides composing its intangible property listed on such returns, but gave only what was listed as the aggregate fair cash value thereof for the respective years * * * the only information on the subject given by the company to the commissioner of the revenue to whom such returns were made and who made such assessments was 'the amount and value

of the bark and hides' aforesaid, read from the books of the company." It was there said that "This evidence is obscure as to whether the number of hides or the pounds of bark were read to the commissioners of the revenue from the books of the company, or just what 'amount' or what 'value' was so read. We do not think that such character of proof is sufficient to show that there was 'a full disclosure' of such bark and hides to the commissioner of the revenue." The facts of that case are radically different from those in the case at bar.

The Commonwealth assigns as cross-error the action of the circuit court in exonerating the plaintiff in error from the payment of omitted taxes for the year 1910. For the reason hereinbefore stated, we are of opinion that the circuit court committed no error in this respect, but that it did err in failing to exonerate the corporation also from such taxes for the years 1911 to 1914, inclusive, and that for this error its judgment must be reversed.

*Reversed.*