MAGNOLIA BANK v. BOARD OF SUPERVISORS OF PIKE COUNTY.

[72 South. 697.]

1. TAXATION. *Constitutional requirements. Classification of subjects. Uniformity. Banks. Equal protection of law. Due process.*

Section 112, Constitution 1890, provides that taxation shall be uniform and equal, but that the legislature may provide for a special mode of valuation and assessment for railroads and other corporate property, but that all such property shall be assessed at its true value, section 181 of the Constitution provides that the property of all private corporations for pecuniary gain shall be taxed in the same manner as the property of individuals, but the legislature may provide for the taxation of banks and banking capital, by taking the shares according to

the value thereof, etc., exclusive of real estate, and section 4273, Code 1906, requires officers of banks to deliver to assessors written assessments as to capital stock and other property exclusive of real estate, and stipulate that banks shall be assessed in conformity with the plans suggested and the authority expressly conferred by Constitution section 181. Under these laws, the assessment for taxation of the capital stock of a bank at par, augmented by the surplus of undivided profits, less real estate at full value, was legal, notwithstanding the fact that other property in the same county was assessed on a valuation of only sixty-six cents on the dollar.

2. SAME.

Such an assessment is not violative of the Fourteenth amendment of the Federal Constitution, guaranteeing due process of law and equal protection of the law; since each state has the sovereign right to classify property for purposes of assessment and taxation, and so long as there is no discrimination between property of the same class, there is no violation of these provisions of our Federal Constitution.

APPEAL from the circuit court of Pike county.

HON. J. B. HOLDEN, Judge.

Petition by the Magnolia Bank to the board of supervisors of Pike county, objecting to an assessment against it for taxation. The board of supervisors overruled the objection and the bank appealed to the circuit court. From a judgment of the circuit court sustaining a demurrer to and dismissing the petition, the bank appeals.

Appellant presented its petition to the board of supervisors of Pike county, objecting to the assessment against it for taxation for the year 1915, and praying that its assessment be reduced from seventy-six thousand dollars to forty-three thousand six hundred thirty-six dollars and sixty-six cents. The petition, in substance, avers that the capital stock of appellant, in the sum of fifty-five thousand dollars, is assessed at par, and that this valuation is augmented or increased by the surplus and undivided profits, less real estate, in the amount of twenty-one thousand dollars, making a total valuation of its capital stock, surplus, and undivided profits, seventy-six thousand dollars, from which is deducted real

estate valued at ten thousand five hundred forty-five dollars; that this assessment is excessive, and if approved will force appellant to pay taxes at a rate in excess of taxes paid by other "moneyed capital in the hands of individual citizens in the county of Pike, where said bank is located;" that the tax assessor of Pike county, in making the assessment, did "systematically and intentionally" assess the property of appellant at full market or par value of the shares augmented by surplus and undivided profits, while assessing other property for taxes in said county at sixty-six cents on the dollar; that this method of assessing appellant at full value, and other taxable property at sixty-six cents on the dollar, is in violation of section 181 of the Constitution of Mississippi, and also is in violation of the Fourteenth Amendment of the Federal Constitution, in that it denies objector the equal protection of the law. The prayer of the petition is that the assessment of appellant's bank should be reduced to conform to other valuations placed upon real and personal property in Pike county. The board of supervisors overruled the objections and denied the relief sought; and appeal was prosecuted from the order of the board to the circuit court, in accordance with the provisions of section 81 of the Code. On the trial of the case anew in the circuit court, demurrer was interposed to the petition and sustained by the court. From the order sustaining the demurrer to and dismissing the petition, appellant has appealed to this court; and in the presentation of the case, counsel for appellant invokes section 112 of our Constitution, as well as section 181 thereof, and the Fourteenth Amendment of the Constitution of the United States. It is the contention of appellant that the method adopted by the taxing authorities of Pike county, as set forth in the petition, violates the equality and uniformity clause of our state Constitution, and denies appellant due process of law, in violation of the Federal Constitution.

*Mayes & Mayes, L. Brame* and *Moody & Williams,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney-General, for appellee.

STEVENS, J., delivered the opinion of the court.

It is conceded by appellant that the shares of its capital stock, augmented by surplus and undivided profits, are worth the amount at which the stock is assessed. It may be here observed, also, that the petition makes no complaint at the valuation of the bank's real estate, and no relief is sought against the assessment of its realty. The contention, briefly stated, is simply this: Appellant admits that its capital stock, surplus, and undivided profits are worth seventy-six thousand dollars. This is the true value and the value upon which the Constitution and statutes of our state contemplate taxes shall be paid. The bank, while conceding that it is under the primary obligation to pay taxes upon this valuation, yet seeks a reduction of thirty-four per cent. because it says that real estate and taxable personal property owned by individual citizens of the county of Pike are being systematically assessed at sixty-six cents on the dollar, or, in other words, individual citizens, by and with the consent of the board, are paying on assessments much lower that the law requires and the government exacts. Does the petition of the bank, then, state a legal cause for complaint? Section 181 of our Constitution provides:

"The property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals, but the legislature may provide for the taxation of banks and banking capital, by taking the shares according to the value thereof (augmented by the accumulations, surplus, and unpaid dividends), exclusive of real estate, which shall be taxed as other real estate."

Section 112 of our Constitution provides:

"The legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property . . . But all such property shall be assessed at its true value," etc.

By these express provisions of the Constitution the legislature is authorized to place banks and banking capital in a class to themselves, and to adopt a method of assessment which the framers of our organic law thought equitable and just. In pursuance of this constitutional authority the legislature has enacted section 4273, Code 1906, requiring the president, cashier, or other officer to make out and deliver to the assessor a written statement under oath of the number and amount of all shares of the capital stock paid in; the amount of undivided profits, surplus, or accumulations of any sort, exclusive of real estate; the value of each share, estimated at par and increased by the surplus or accumulations; and stipulating that banks shall be assessed in conformity with the plan suggested and the authority expressly conferred by section 181 of the Constitution. We assume that appellant, in accordance with the statute, executed the written statement provided for, and upon this statement the assessor placed upon the assessment roll of Pike county a perfectly lawful assessment of appellant's bank.

Counsel frankly admit that if the relief prayed for in this case is granted, appellant will not pay in accordance with the literal provisions of section 181 of the Constitution, but contend that section 112, providing that "taxation shall be uniform and equal throughout the state," and that "property shall be assessed for taxes under general laws, and by uniform rules, according to its true value," and the further provisions of section 181 that "the property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals," justify and demand the relief sought. Some of the authorities cited by counsel from other states apparently justify their contention,

but each case is largely controlled by the specific language of the Constitution of the state under which the case arises. The rights of appellant in the present case are, of course, measured and controlled by our own Constitution, and, looking to the express provisions of both sections 112 and 181, the legislature is authorized to provide a special mode of assessment of banks and banking capital , and when appellant has been assessed in accordance with this method it has no complaint to register. There is no intimation of any discrimination as between banks or banking capital. All banks in Mississippi are assessed exactly alike, and all pay the same rate of taxation. They all do business in accordance with and are protected by the laws of our state. The method adopted for their assessment as compared with the method of assessing individuals, is highly favorable to the banks. This provision, so favorable to banks, has already been alluded to by our court in *Bank* v. *Oxford,* 70 Miss. 504, 12 So. 203, where Campbell, C. J., calls attention to the fact that the solvent credits of an individual are taxable assets, but that the assets of a bank invested in securities of various kinds are not taxable, and further observes:

Why this is so, is not for judicial inquiry but so the law is written, and has been in this state for about half a century, and it has been embodied in the Constitution of 1890, permissively but suggestively to the legislature. Section 181.''

Although the individual money lender may be operating upon borrowed capital, he yet must pay on all money on deposit, loaned or invested in solvent credits. Banks invest not only their capital stock, but money placed with them on deposit, whether subject to check immediately or placed on time certificates. There can be no contention, therefore, that banks, as a class, are discriminated against by the revenue laws of our state. The bold request is here made to give them a discount not authorized by the law, simply because the other taxpayers of Pike county are not measuring up to the re-

quirements of the law.   This, in our judgment, is not a sufficient ground for complaint.   There are no positive averments of fraud in the petition, and we are not called upon to vitiate or condemn the entire assessment on the ground of fraud.   We are not called upon to declare a statute invalid as being in violation of the Constitution. The assessment here in question is in strict accord with the Constitution, and to grant the relief prayed for would, in a sense, defeat, rather than accomplish, the provisions of section 181.   We are mindful of the fact that our statutes apparently do not provide a specific method whereby one taxpayer can object to the assessment against another taxpayer, at least to the extent of granting in such case an appeal from the order of the board of supervisors to the circuit court.   It yet remains that it is the duty of each person, in fixing the value of his property, to estimate the same at its cash value, and the board is under the duty to increase or diminish the valuation as it may deem just and proper, and it is also the duty of the board to report any taxpayer who willfully undervalues his property, to the grand jury of the next circuit court of the county, in accordance with provisions of section 4268 of the present Code.   The maladministration of the law by members of the board of supervisors in one of the eighty counties of our state should not have the far-reaching and destructive effect contended for in this case.

Counsel for appellant rely upon the case, among others, of *Cummings* v. *Merchants' National Bank of Toledo,* 101 U. S. 153, 25 L. Ed. 903, but this very case well observes that:

"While it may be true that this system of submitting the different kinds of property subject to taxation to different boards of assessors and equalizers, with no common superior to secure uniformity of the whole, may give opportunity for maladministration of the law and violation of the principle of uniformity of taxation and

equality of burden, that is not the necessary result of these laws, or of any one of them.''

If the board of supervisors systematically assesses taxable property at much less than its true value, and appellant is accorded the right to have its assessment reduced to this unlawful minimum, then why should not all the banking establishments in all the other seventy-nine counties of the state have the constitutional right to a reduction of their assessment to conform to the assessment accorded appellant? If this method were pursued to its last analysis we would have the ridiculous spectacle of the board of supervisors in one county forcing an arbitrary reduction of all the taxable property of the state far below that which the Constitution and laws demand.

But, it is contended that this court, in *Adams* v. *Bank,* 75 Miss. 701, 23 So. 395, and *Adams* v. *Bank,* 78 Miss. 533, 29 So. 402, made a distinction between the provisions of section 112 of our present Constitution and the like provisions in the Constitution of 1869. We think the two cases last mentioned are materially different from the case at bar. In the first of these cases, the primary question at issue was the constitutionality of chapter 29, Acts 1894, declaring that no city or town shall impose or collect a greater tax on banks or solvent credits than the state tax for the same year. The court held this statute obnoxious to the equality and uniformity clause of our Constitution. The weakness of this statute was the effort to impose a smaller municipal tax on banks and solvent credits than other taxable property was required to pay. In *Adams v. Bank,* as reported in 78 Miss. 533, 29 So. 402, the constitutionality of an act of the legislature of 1890, prohibiting cities and towns from levying on banks or solvent credits a tax greater than seventy-five per centum of the state tax, was asked to be held in violation of the Constitution of 1869, following the first decision, *Adams v. Bank,* 75 Miss. 701, 23 So. 395. The court declined to disturb its prior decisions, or to give the views

expressed in the first case a retroactive effect. It must be observed that each of these statutes attempted to apply a different rate of municipal taxation on banks and solvent credits than that which was being applied generally upon all other taxable property within the confines of municipalities. That is not the case now before us.

The case of *Taylor* v. *Railroad Co.*, 88 Fed. 350, 31 C. C. A. 537, is cited with much confidence as authority for appellant. The case was decided by the circuit court of appeals, then composed of Judges TAFT, LURTON, and SEVERENS; and the opinion of these eminent jurists is, of course, high authority. That case, however, arose under the Constitution of Tennessee (Const. art. 2 sec. 28), which has the express provision that:

"All property shall be taxable according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value."

The action in that case was against the board of equalization of Tennessee, and the showing was made that the railroad property of the state was assessed at its real value, while all other taxable property of the state was being systematically assessed at not exceeding seventy-five per cent. of its true value. In other words, this suit involved state-wide action by the board of equalization, and even then the opinion of the court admitted that:

"The court is placed in a dilemma, from which it can only escape by taking that path which, while it involves a nominal departure from the letter of the law, does injury to no one, and secures that uniformity of tax burden which was the sole end of the Constitution."

The Tennessee Constitution did not place railroads in a class to themselves, but forbids discrimination as between species of property. The dilemma that confronted the court in that case would be insignificant com-

pared with the dilemma into which all the revenue laws of our state would be plunged should we grant the relief asked for in the instant case. Our state tax is uniform throughout the confines of our commonwealth, and the ultimate amount of the tax to be paid by a particular bank or individual will, of course, depend upon the assessment. If Pike county unlawfully and arbitrarily establishes a low-value assessment on certain species of property, and appellant, as a resident bank, is thereby accorded the right to cut its assessment to the unlawful minimum, then all the other banks in Mississippi should in equity be accorded the same right; and such a holding would result in putting it within the powers of the board of supervisors of one county to establish an arbitrary minimum and unlawful standard of values or criterion by which all the other counties must be governed. Furthermore, if this equitable view of our Constitution should be strictly applied, why should not the bank in this case have a right to complain that much valuable property has escaped taxation altogether? As a matter of fact there are many successful "tax dodgers" in our state who ought to be bearing their part of the burdens of taxation. After all, we must get back to the admitted fact that the law itself does not authorize unequal taxation, and that in the enforcement of the revenue laws exact equality cannot in all cases be attained.

There is no merit in the contention that a denial of the relief sought would in any wise violate the Fourteenth Amendment of the Federal Constitution, guaranteeing due process of law and equal protection of the laws. Each state has the sovereign right to classify property for purposes of assessment and taxation, and so long as property of the same class bears the same rate, or, to state differently, so long as there is no discrimination between property of the same class, there is no violation of these provisions of our Federal Constitution. *Michigan Central Railroad Co.* v. *Powers*, 201 U. S. 300, 26

Sup. Ct. 459, 50 L. Ed. 764, and authorities there mentioned.

By paying the full tax for which appellant is assessed in this case, it will pay only what the supreme law of the land has exacted. It will simply be rendering "unto Cæsar the things that are Cæsar's."

*Affirmed.*