# Wytheville.

## RIXEY'S EXECUTORS V. COMMONWEALTH OF VIRGINIA.

### June 12, 1919.

Absent, Sims and Burks, JJ.

Rehearing Denied Richmond, November 26, 1919

1. TAXATION—*Estate of Decedent—Situs for Taxation.*—The situs for taxation of the property of a decedent held by his personal representative during the administration of the estate is at the last domicile of the testator or intestate, and there it is taxable, and not elsewhere. The fact that the executors or administrators resided elsewhere when the assessment was made does not affect the case.

2. TAXATION—*Estate of Decedent—Executors also Trustees.*—In the instant case, the petitioners, the executors of the estate of a decedent, contended that while it might be true that the property belonging to the estates of deceased persons should be listed and is taxable at the last residence of the deceased, the property here involved, which is in their hands, is held in trust for the benefit of others, the executors being trustees, and therefore it should be listed and taxed to the trustees where they reside, or it should be listed by and taxed to the trustees at the place of residence of the person for whose benefit the property is held.

*Held:* That the petitioners held the property at the time the assessments in question were made, and still hold it, as executors of the will of the deceased, and the property is in their hands as the undistributed property of his estate. While it is true, as it is true of every fiduciary, that an executor occupies a position of trust, it is also true that an essential part of his duty is to distribute the estate of his testator, that until distributed he holds it as executor, and that the sureties on his bond as executor are responsible for any failure to make proper distribution thereof. Eight times in the will these executors were described as his "personal representatives" by the testator.

3. EXECUTORS AND ADMINISTRATORS—*Executor as Trustee.*—If an executor is directed to invest funds belonging to the estate which come into his hands as executor, no trust is superadded,

43

but that is a part of his duties as executor. If an executor is also appointed as a trustee under a will, he cannot be considered as holding any .part of the assets in his capacity as trustee until he has closed his accounts as executor with reference to this particular fund and has been charged with the fund as trustee.

4. TAXATION—*Situs—Local and State Purposes.*—If the proper situs for taxation of intangible property is a certain magisterial district, then it is liable for local as well as State taxation at that situs.

5. TAXATION—*Situs—Intangible Personal Property—Undistributed Estate of Decedent.*—The situs for taxation of intangible personal property is at the domicile of the owner, and·in case of an undistributed estate held by the personal representatives, the property must be deemed to be the property of the decedent until it has been distributed to those who succeed him in the beneficial ownership.

6. TAXATION—*Excessive assessments—Burden of Proof.*—The presumption is in favor of the validity· of tax assessments which are regularly made, and the burden is upon those who seek to show that valuations are excessive to prove that fact.

7. TAXATION—*Uniformity—Absolute Equality not Necessary.*—The difficulties of securing absolute equality in assessments are everywhere recognized, but no machinery has yet been devised by which these difficulties may be fully overcome. It cannot be too distinctly borne in mind that any possible system of tax legislation must inevitably produce unequal and unjust results in individual cases; and, if inequality in result must defeat the general law, then taxation becomes impossible, and governments must fall back upon arbitrary exactions. But no such impracticable principle is recognized in revenue laws. While equality and justice are constantly to be aimed at, impossibilities are not demanded. Tax legislation must be practical.

8. TAXATION—*Uniformity—Liberal Construction of Statutes.*—If the courts had either the wisdom to devise or the power to bring about absolute equality in taxation, they should not hesitate to act. Until, however, they attain to that wisdom and are vested with that power, tax statutes must be liberally construed to produce the best attainable results, and the dream of absolute equality must remain unrealized.

9. TAXATION—*Uniformity—Due Process of Law.*—It is a systematic, intentional discrimination, by those administering the tax system of a State (whether as directed by statute or contrary to statute), against a person, by an assessment of the property of such person at a higher rate of valuation than that applied

to the same kind of property of other persons whose property is taxed in the same jurisdiction, which is condemned and held to be a denial to the person first referred to of the due process of law and the equal protection of the law guaranteed to them by the Federal Constitution.

10.  TAXATION—*Uniformity—Due Process of Law.*—Where there has been no discrimination between persons or classes of persons, but the property of the like kind of all persons in a given jurisdiction has been undervalued in its assessment for taxation contrary to law, for a correction to be made of such assessment of any individual property owner according to law, by an assessing officer, by a board of review, by a commissioner of court, by a court, or by any other legislatively authorized agency, means, or instrumentality, does not fall under the ban of the authorities, although it may be true that such correction may not be made as to all of the persons whose property has been thus under-assessed. If there be not a systematic, intentional discrimination between persons or classes of same kind of property in the making or in the correction of assessments, such action is not a denial of due process of law and the equal protection of the laws.

11.  TAXATION—*Duty of Owner of Property—Inequality.*—The ownership of taxable property imposes the duty of paying taxes thereon. This duty inheres as an essential incident to such ownership. For one who is clearly liable to taxation to seek relief therefrom upon the ground that there are others who are equally or partially delinquent is to assign a reason therefor which is manifestly insufficient, for there are also many others who have paid all that they owe, so that to relieve any of their just obligations neither enforces nor promotes that uniformity which is enjoined by law, but just the contrary thereof. To relieve those clearly liable is to increase the inequality and to make still worse that which is already bad.

12.  TAXATION — *Omitted Taxes — Code of 1904, Section 508, as Amended by Acts 1916, Ch. 491—Retrospective Statute.*—Code of 1904, section 508, as amended by Acts 1916, p. 827, provides that: "No municipal, county or district tax shall be levied or collected on any assessment of intangible personal property, money or incomes for taxes alleged to have been omitted from the assessments for the years prior to nineteen hundred and twelve." In the instant case an assessment had been made in 1914 for the year 1911, before the adoption of the amendment, and the question was whether the limitation thereby provided applies to such a previous assessment.

*Held:* That it did. The legislature was adopting a statute of repose, and intended that after the act became effective no

claim for omitted municipal, county, or district taxes should be enforced by levy or by any other means collected for such as were omitted for the years prior to 1912. The act was clearly intended to be retrospective to the extent indicated.

13. TAXATION—*Penalties and Interest.*—It is the duty of every taxpayer to report his property for assessment and to pay the tax thereon by December 1st following, in order to escape the prescribed penalties. The statute (section 603 of the Code of 1904) imposes the penalty, and the Supreme Court of Appeals has no power to relieve a delinquent taxpayer therefrom. The same principles apply as to the interest which the officers, by mandate of the statute, are required to collect.

## ON REHEARING.

14. TAXATION—*Proceeding by Taxpayer to Correct Erroneous Assessment—Assessment Against Taxpayer of Omitted Taxes—Failure of Tax Officials to Perform Duty.*—On a motion by a taxpayer to correct an erroneous assessment, the taxpayer renders himself liable in that proceeding to pay all taxes with which he is chargeable in that jurisdiction upon a correct assessment of his property, whether or not the officials charged with the duty of enforcing the tax statutes requiring proper returns performed their duty.

15. TAXATION—*Failure of Officials—Taxpayer not Relieved.*—Under section 174 of the Constitution of 1902, no dereliction of the examiners of records in failing to report the property, or of the commissioner of the revenue in failing to assess it for taxation, can relieve any taxpayer of his own duty to list and return his taxable property for taxation; nor can such concurring failures and omissions relieve any of the property from its just proportion of the tax burdens, which are intended to be equal and uniform.

16. TAXATION—*Local Purposes—Intangible Property of Decedent.*—For the purpose of taxation, a decedent or his executors must be deemed residents of the magisterial district of which the decedent was domiciled at his death within the meaning of the words "residents in the magisterial district" proposed to be taxed for district purposes, as used in Acts 1915, p. 119.

17. TAXATION—*Penalties and Interest.*—As penalties and interest are imposed by statute upon taxpayers who are in default, in order to insure the prompt payment of taxes which are necessary for the support of the government, the courts have no authority to relieve them therefrom. The citizen who desires to avoid paying such penalties and interest can pay the tax assessed promptly, and then institute the proceeding provided by statute for exoneration therefrom. If he establishes the

invalidity of the tax, or any part thereof, the state or local authorities are required to refund the amounts illegally exacted. If he declines to pay upon the ground of invalidity of the tax assessed, he must take the consequences, if his litigation results unfavorably to him, and one of these inevitable consequences is that he must pay penalties and interest upon taxes lawfully due which have not been promptly paid.

18. TAXATION—*Interest—Omitted Taxes.*—Taxes which were regularly assessed for the years 1915, 1916 and 1917 upon intangible property are not omitted taxes, and there is no statute requiring interest to be paid thereon, and hence none can be collected. Code of 1904, sec. 636, relates only to interest on taxes on land returned delinquent.

Error to a judgment of the Circuit Court of Culpeper county on a motion to correct an erroneous assessment. Judgment for the Commonwealth. Plaintiffs assign error.

*Amended and affirmed.*

The opinion states the case.

*John S. Barbour* and *J. G. Hiden,* for the plaintiffs in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., assistant Attorney General; O. L. Shewmake* and *F. Briggs Richardson,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The petitioners, John S. Barbour and the Virginia Trust Company, of Richmond, executors of the last will and testament of John F. Rixey, deceased, complain of a judgment and order refusing to exonerate them from certain assessments made upon intangible property for State and local taxes for the years 1911 to 1917, inclusive. The testator died February 9, 1917, his will was admitted to probate in the Circuit Court of Culpeper county March 18, 1907, and John S. Barbour and "some incorporated trust or security

company" were nominated joint executors thereof. Mr. Barbour and the Virginia Safe Deposit and Trust Company of Alexandria qualified as such executors. They acted until March 11, 1911, when the authority of the Virginia Safe Deposit and Trust Company was revoked, and the Virginia Trust Company of Richmond, Va., was appointed in its place. The said Barbour and the Virginia Trust Company have since continued to act.

The will devises to the testator's wife, Ellie B. Rixey, during her life and widowhood and until his youngest child shall become twenty-one years of age, his home farm, "Beauregarde," and part of his "Richlands" farm, together with all the personal property on the said farms, and directs that none of the personal property covered by that clause shall be appraised or inventoried, or go into the hands of his personal representatives, as he was of opinion that it was necessary for the proper conduct of the farms and the support of his family. It also directed that the residue of his estate, real, personal and mixed, wheresoever situated, including all funds arising from life insurance, should go into the hands of his executors, to be managed, controlled and administered in the manner and for the purposes indicated in his will; that they should invest all moneys and the proceeds of all personal property coming into their hands in good, interest-bearing securities, and should farm, rent, or otherwise conduct his real estate until sold, in the best manner, and pay over the annual income arising from his estate to his wife until her death or remarriage, or until his youngest child should become twenty-one years of age. The executors were given full power, acting jointly, to sell and convey the real estate or personal property mentioned in the third clause of the will, either in whole or in parcels, with the provision that the proceeds should be invested and the income therefrom paid to the testator's widow for the period mentioned. He further directed that

when his youngest child should become twenty-one years of age, his widow being alive and unmarried, one-third of the entire income from the estate should be paid over to his widow as long as she lived and remained his widow, and the remaining two-thirds divided equally between his surviving children, and the descendants *per stirpes* of such as might be dead leaving descendants; and that upon the death of his wife, or her remarriage, his youngest child having become twenty-one years of age, his entire estate should go to and be divided equally between his children then living and the descendants *per stirpes* of such as might be then dead with issue surviving. The will also provided that the farm known as "Richlands" should not be sold by his executors, but that his son, John Rixey, should have the privilege of "taking it" upon attaining his majority at $25 per acre.

At the time of his death, the testator was domiciled in Stevensburg district, Culpeper county, Virginia. The widow, in writing, after the youngest child became of age, renounced her life estate in the property of the testator, and this document, together with the fourth and fifth clauses of the will, have been construed by this court in *Compton v. Rixey's Executors*, 124 Va. 548, 98 S. E. 651, and it is there determined that the children living at the death or remarriage of his wife, and the descendants *per stirpes* of such as may be then dead with issue surviving, take contingent remainders in the property, and that the renunciation of the will by the widow does not accelerate the vesting of these remainders.

The executors returned the property for taxation and it was assessed as located in Stevensburg district, Culpeper county, for the years 1908, 1909 and 1910. Thereafter no property was returned by them for taxation and no assessment was made thereon until 1914, when the examiner of records for that district, pursuant to the provisions of sec-

tion 508 of the Code, as amended by the act approved March 25, 1914 (Acts 1914, p. 486), reported the value of the intangible property held by the executors for the years 1911 to 1914, inclusive, consisting of funds arising from life insurance policies and from the real estate transferred to his son, and from the sales of real and personal property to others. The commissioner of the revenue assessed it as located in Stevensburg district, for State, county and district taxes for those years. These assets consisted of bonds secured by liens upon real estate, and bank deposits, all of which were assessed at their face value. Similar assessments were thereafter made for the years 1915, 1916 and 1917.

The executors, on September 15, 1915, moved the Circuit Court of Culpeper county for exoneration from the assessments made for the years 1911 to 1914, inclusive. and in October, 1917, made a similar motion for like relief from the assessments for the years 1915 to 1917, inclusive. These motions were heard together, partial relief was granted, and the order complained of entered. None of this intangible property was returned for taxation by the executors or reported elsewhere for taxation during these years—1911 to 1917.

1. It is claimed for the petitioners that Stevensburg district, Culpeper county, was not the proper situs for the taxation of this property under the Virginia statutes, and if it was, that the assessments should not have been made against the executors. To support this claim, various sections of the statutes of Virginia are quoted, referring chiefly to the assessment of the property of living persons.

[1] The situs for taxation of the property of decedents, held by their personal representatives during the administration of the estate has been definitely settled in Virginia by the case of *City of Staunton* v. *Stout's Executors*, 86 Va. 321, 10 S. E. 5. There the property of the decedent was

assessed in Middle River district, Augusta county, in which the deceased was domiciled at the time of his death. It was claimed that because the executors lived in the city of Staunton the property should be assessed there. The court says: "The fact that the executors resided in Staunton when the assessment was made does not affect the case. There being no statute in Virginia to the contrary, the situs of the property is at the last domicile of the testator, and there it is taxable, and not elsewhere. Burroughs on Taxation, 224; Cooley on Taxation, 270; 1 Desty on Taxation, sec. 68, p. 333."

This rule which is fixed in Virginia accords with that which obtains in many States. 37 Cyc. 807, 958, and cases there cited.

The reason therefor is thus stated in *Cornwall, Ex'or,* v. *Todd,* 38 Conn. 443: "So far as property is concerned, and for the purposes of collecting and paying debts, and doing justice by others, the acts and doings of a deceased person while in life still continue to affect the living in a certain legal sense, therefore, and for certain purposes, he still lives, and will continue to live until those purposes are fully accomplished. As he is incapable of acting for himself, the executor or administrator represents him. The law requires this property, while in a transition state from the dead to the living, to bear its proportion of the public burdens. For the purposes of taxation, therefore, it must have a situs. None can be more appropriate than the place where the deceased lived and died. I apprehend, therefore, the true rule to be this: 'The personal property of a deceased person is taxable, during the settlement of the estate, in the place of domicile of the deceased.'"

The same rule is followed in Massachusetts. *Hardy, et al.,* v. *Inhabitants of Yarmouth, et al.,* 6 Allen (Mass.) 277.

That the property should be listed for taxation by these executors is perfectly clear by the mandate of section 492

44

of the Code (recently construed as to property in the hands of a non-resident guardian in *Taylor, Guardian,* v. *Commonwealth,* 124 Va. 445, 98 S. E. 5), which provides, among other things, that "if the property be the estate of a deceased person, it shall be listed by the personal representative, or person in possession, and taxed to the estate of the deceased person."

[2]   The petitioners, nevertheless, contend that while it may be true that the property belonging to the estates of deceased persons should be thus listed and is taxable at the last residence of the deceased, the property here involved, which is in their hands, is held in trust for the benefit of others, the executors being trustees, and that therefore it should be listed and taxed to the trustees where they reside; or, having regard to the rule laid down in the case of *Wise* v. *Commonwealth,* 122 Va. 693, 95 S. E. 632, it should be listed by and taxed to the trustees at the place of residence of the person for whose benefit the property is held. They fail, however, to show that they are trustees within the meaning of section 492 of the Code, as construed in that case.   These petitioners held the property at the time these assessments were made, and still hold it, as executors of the will of John F. Rixey, and the property is in their hands as the undistributed property of his estate.   While it is true, as it is true of every fiduciary, that an executor occupies a position of trust, it is also true that an essential part of his duty is to distribute the estate of his testator; that until distributed, he holds it as executor, and that the sureties on his bond as executor are responsible for any failure to make proper distribution thereof.   Eight times in the will these executors are described as his "personal representatives" by the testator, and the seventh clause of his will provides that all securities and investments shall be taken and made in their names jointly "as my personal represen-

tatives," and shall only be disposed of and transferred in like manner.

[3] If an executor is directed to invest funds belonging to the estate which come into his hands as executor, no trust is superadded, but that is a part of his duties as executor. If an executor is also appointed as a trustee under a will, he cannot be considered as holding any part of the assets in his capacity as trustee until he has closed his accounts as executor with reference to this particular fund and has been charged with these funds as trustee. *Hall* v. *Cushing,* 9 Pick. (Mass.) 395; *Perkins* v. *Moore,* 16 Ala. 9; 18 Cyc. 1258.

The case of *Wise* v. *Commonwealth, supra,* which is relied upon, bears only remote relation to this case. No estate of a deceased person was there involved. The fund which was held liable for taxation in that case belonged to a resident of Virginia; arose out of a conveyance from her children, was held by a trustee who lived in New York, and its taxation is provided for in section 492 of the Code, as construed by this court in that case.

The inconvenience of any other construction than that here indicated is manifest in this case. One of these fiduciaries lives in the county of Fairfax, and one in the city of Richmond. The beneficiaries entitled to the income severally reside in Albemarle and Clarke counties, Virginia, and in the cities of Washington and New York; and the learned counsel for the executors fail to indicate definitely the proper situs for the taxation of the property which has not been listed or reported for taxation anywhere during the years involved, either by the executors or the beneficiaries.

[4, 5] 2. It is claimed that it is contrary to the Virginia statutes, as well as to the guaranties of the Federal and State Constitutions, to assess the property for taxation for local purposes in Culpeper county. The answer to this

claim is that if the proper situs for the taxation of the property is Stevensburg magisterial district, Culpeper county, then it is liable for local as well as State taxation at that situs. The situs for taxation of intangible personal property is at the domicile of the owner, and in this case, as in every other case of an undistributed estate held by the personal representatives, the property must be deemed to be the property of the decedent until it has been distributed to those who succeed him in the beneficial ownership. Here, the property for purposes of taxation is still the property of the estate of John F. Rixey. It is still controlled by his dead hand under the provisions of his will, and it cannot be distributed to those for whom it is ultimately intended until the death or remarriage of his widow. The remainders being contingent, the ultimate beneficial owners are not yet ascertained.

The official domicile of these executors corresponds with the legal domicile of the testator. 37 Cyc. 807. *Gallup, Executor,* v. *Schmidt,* 154 Ind. 196, 56 N. E. 443, involved the taxation of omitted property belonging to the estate of a decedent in the hands of his executor, and it was there held that the situs for taxation of the property was the domicile of the decedent, notwithstanding the fact that the executor was not a resident of the State of Indiana. The same rule is enforced in *Bonaparte, Executor,* v. *Maryland,* 63 Md. 465.

[6] 3. It is claimed that the assessments were excessive, not uniform, and violative of the State and Federal Constitutions.

It is sufficient to say as to the suggestion that the valuations were excessive, that the burden is upon the executors to show this fact, and there is no evidence in the record which sustains this view, or to overcome the presumption which attaches to assessments which are regularly made. That presumption is in favor of the validity of the assess-

ments. Throop on Public Officers, sec. 541; *Fleming* v. *Charnock*, 66 W. Va. 54, 66 S. E. 8, 18 Ann. Cas. 711; *Palmer* v. *Bolling*, 8 Cal. 384; *People* v. *McComber*, 7 N. Y. Supp. 71.

[7] It is complained that these assessments are invalid because real estate and tangible personal property are not generally assessed at their fair market value. The difficulties of securing absolute equality in assessments are everywhere recognized, but no machinery has yet been devised by which these difficulties may be fully overcome.

· It is said by Mr. Justice Miller, in *State Railroad Tax Cases*, 92 U. S. 575, 23 L. Ed. 672, that "perfect equality and perfect uniformity of taxation, as regards individuals and corporations, or the different classes of property subject to taxation, is a dream unrealized." *German National Bank* v. *Kimball*, 103 U. S. 732, 26 L. Ed. 469; *Magnolia Bank* v. *Board of Supervisors*, 111 Miss. 857, 72 So. 697; 1 Cooley on Taxation 258.

In *Commonwealth* v. *Savings Bank*, 5 Allen (Mass.) 436, Bigelow, C. J., says: "Perfect equality in the assessment of taxes is unattainable. Approximation to it is all that can be had. Under any system of taxation, however wisely and carefully framed, a disproportionate share of the public burdens will be thrown on certain kinds of property, because they are visible and tangible, while others are of a nature to elude vigilance. It is only where statutes are passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear the public charges that courts can interpose and arrest the course of legislation by declaring such enactments void."

Sharswood, J., in *Grim* v. *School District*, 57 Pa. 437, 98 Am. Dec. 237, says: "Perfectly equal taxation will remain

an unattainable good as long as laws and government and man are imperfect."

In *Head Money Cases*, 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 802, it is said: "The tax is uniform when it operates with the same force and effect in every place where the sub-ject of it is found," and "perfect uniformity and perfect equality of taxation, in all the aspects in which the human mind can view it, is a baseless dream."

In 1 Cooley on Taxation, p. 390, this is said, referring to double taxation: "It cannot be too distinctly borne in mind that any possible system of tax legislation must inevitably produce unequal and unjust results in individual cases; and if inequality in result must defeat the general law, then taxation becomes impossible, and governments must fall back upon arbitrary exactions. But no such impracticable principle is recognized in revenue laws. While equality and justice are constantly to be aimed at, impossibilities are not demanded. Tax legislation must be practical."

And at page 363, referring to accidental omissions, this is quoted from *Weeks.* v. *Milwaukee*, 10 Wis. 242: "The execution of these laws is necessarily intrusted to men, and men are fallible, liable to frequent mistakes of fact and errors of judgment. If such errors on the part of those who are attempting in good faith to perform their duties should vitiate the whole tax, no tax could ever be collected. And, therefore, though they may sometimes increase improperly the burden of those paying taxes, the rule which holds the tax not thereby avoided is absolutely essential to the continuation of the government." Mr. Cooley adds: "It seems difficult to resist the force of this reasoning, and it applies to the case of a mistake of law with the same cogency as to the case of a mistake of fact. Indeed, where the omission has occurred through no purpose to evade or disregard official duty, the occasion which produced it seems wholly immaterial."

[8]  Recently in this State, in the effort to correct in some measure inequalities between individuals, various localities in the State and various classes of property, the legislature has enacted many important amendments to the tax statutes.  One of these is that intangible property, which prior to 1915 was subjected to the same rate of taxation as that applied to real estate and other tangible property, since that time has been put in a different class, and while being taxable at its fair value as real estate and personal property are required by law to be taxed, the rate applied thereto is substantially lower.  In this way the State has endeavored to remove the injustice and inequality growing out of the fact that real estate and tangible property are generally assessed at less than its fair value.  It was also believed that, as much intangible property escaped taxation by reason of the fact that it was not properly reported by its owners, a lower rate would induce more complete returns thereof.  If the courts had either the wisdom to devise or the power to bring about absolute equality in taxation, they should not hesitate to act.  Until, however, they attain to that wisdom and are vested with that power, tax statutes must be liberally construed to produce the best attainable results, and the dream of absolute equality must remain unrealized  As the legislature has the power to classify the various kinds of property (*City of Richmond* v. *Drewry-Hughes Co.,* 122 Va. 178, 90 S. E. 635, 94 S. E. 989), little aid is afforded by comparing assessments of intangible property with assessments and taxes collected on real estate.  There is nothing in this record to indicate that the intangible property of this estate has been taxed at any greater percentage of its real value than the intangible property of other owners of such property, whether voluntarily reported or discovered by the diligence of the officials.

[9, 10]  The question of such discriminations is considered by this court in *Union Tanning Co.* v. *Commonwealth,*

123 Va. 610, 96 S. E. 780, and is thus dealt with by Sims, J.: "An examination of those authorities (referring to the authorities relied on in that case and here) discloses that it is a systematic, intentional discrimination, by those admin- istering the tax system of a State (whether as directed by statute or contrary to statute) against a person, by an as- sessment of the property of such person at a higher rate of valuation than that applied to the same kind of property of other persons whose property is taxed in the same jurisdic- tion, which is condemned by such authorities and held to be a denial to the person first referred to of the due process of law and the equal protection of the laws guaranteed to them by the federal Constitution. This becomes more ap- parent from an examination of the many authorities on this subject, among which are the following, viz:. *German Nat. Bank* v. *Kimball,* 103 U. S. 732, 26 L. Ed. 469; *Stanley* v. *Board of Supervisors,* 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; *Coulter* v. *Louisville, etc., R. Co.,* 196 U. S. 599, 25 Sup. Ct. 342, 49 L. Ed. 615; *Albuquerque Nat. Bank* v. *Perea,* 147 U. S. 87, 13 Sup. Ct. 194, 37 L. Ed. 91; *Sunday Lake Iron Co.* v. *Township of Wakefield,* 247 U. S. 514, 38 Sup. Ct. 495; 62 L. Ed. 1154. But where there has been no dis- crimination between persons or classes of persons, but the property of the like kind of all persons in a given jurisdic- tion has been undervalued in its assessment for taxation contrary to law, for a correction to be made of such as- sessment of any individual property owner according to law, by an assessing officer, by a board of review, by a com- missioner of court, by a court, or by any other legislatively authorized agency, means or instrumentality, does not fall under the ban of the authorities aforesaid relied on by said company; although it may be true that such correction may not be made as to all of the persons whose property has been thus under-assessed. If there be not a systematic, inten- tional discrimination between persons or classes of persons

owning the same kind of property in the making or the correction of assessments, such action does not fall within the principle of the cases relied on by said company, as aforesaid. *State* v. *Hall*, 172 Ala. 316, 54 So. 563; *Magnolia Bank* v. *Board of Supervisors*, 111 Miss. 857, 72 So. 697. As said in one of the cases last cited, ' "the equal protection of the laws" does not mean equal immunity in its violation or evasion,' and, as pointed out in substance in both of such last-cited cases, if, because a law for the assessment of property has been generally evaded by or not enforced for a time against owners of the same kind of property, until it has become a custom or rule among assessing officers to assess such property of all owners thereof at a certain percentage of and less than its fair cash value, instead of at its fair cash value, as the statute on the subject may require (as it does in Virginia), it were held that the legislature and the courts, or other legislatively authorized agencies, are powerless to correct any one of such assessments, until and unless all of them are corrected; that would be, in effect, to allow violators of the law to repeal the law, or to beget a constitutional right in every evader of the law to plead immunity from its enforcement except upon condition that no other evader of it be allowed to escape from its requirements."

[11] The ownership of taxable property imposes the duty of paying taxes thereon. This duty inheres as an essential incident to such ownership. For one who is clearly liable to taxation to seek relief therefrom upon the ground that there are others who are equally or partially delinquent, is to assign a reason therefor which is manifestly insufficient, for there are also many others who have paid all that they owe, so that to relieve any of their just obligations neither enforces nor promotes that uniformity which is enjoined by law, but just the contrary thereof. To re-

45

lieve those clearly liable is to increase the inequality and to make still worse that which is already bad.

[12] 4. That the court sustained the assessment of the property for local purposes for the year 1911 is complained of. The basis of this claim is clause 2 of the proviso in the amendment of section 508 of the Code, Acts 1916, p. 827, which provides that "no municipal, county or district tax shall be levied or collected on any assessment of intangible personal property, money or incomes for taxes alleged to have been omitted from the assessments for the years prior to nineteen hundred and twelve."

This section was considered in *Commonwealth* v. *United Cigarette Machine Co.*, 120 Va. 835, 92 S. E. 901, as to assessments made after the adoption of the statute, and the validity of the statute is upheld in an opinion by Kelly, J., which needs no elaboration. In this case, however, the assessment had already been made in 1914 for the year 1911, before the adoption of that amendment, and the question here is whether the limitation thereby provided applies to such a previous assessment. We are of opinion that it does apply, and that the claim that the locality acquires a vested right in omitted taxes if assessed before the enactment of 1916 is as invalid and unsound as if the assessment had been made after its adoption. It is noted that the proviso does not in terms prohibit assessments. What it expressly prohibits is the levying or collecting of omitted local taxes for any year prior to 1912. Clause 3 of the same proviso has this language: "but nothing herein shall be construed to postpone the power of the proper officers to use the remedies provided for by law for the collection of omitted taxes assessed prior to December first, nineteen hundred and fifteen, for the period and within the limitation prescribed above." Now, the only period prescribed in the act with reference to local taxes is the period prescribed in clause 2, and hence the last quotation from the statute emphasizes

the idea that the legislature was adopting a statute of repose, and intended that after the act became effective no claim for omitted municipal, county or district taxes should be enforced by levy or by any other means collected, for such as were omitted for the years prior to 1912. We think, therefore, that the point is well taken; that the act was clearly intended to be retrospective to the extent indicated, and hence that the court erred in refusing to exonerate the petitioners from the omitted local taxes for the year 1911, the collection of which was expressly prohibited by the act referred to. *Whitlock* v. *Hawkins,* 105 Va. 242, 53 S. E. 401.

5. It is claimed that excessive local rates were applied for the year 1911, but in view of the fact that we have determined that no local taxes for 1911 can be collected, it is unnecessary to notice that point further.

It is also claimed that improper rates were applied to the money in the hands of the executors for the years 1912-1913. Counsel for defendants in error admit this, which appears to be the result of a clerical error. The amount of the county and district levies for 1912, instead of being $109.51 should have been $10.95, and for the year 1913, instead of $197.78, should have been $19.77; and these errors will be corrected here.

[13] 6. It is urged that no penalties or interest should have been added. No reason is assigned for this claim. It is the duty of every taxpayer to report his property for assessment and to pay the tax thereon by December 1st, following, in order to escape such penalties. *Commonwealth* v. *United Cigarette Machine Co., supra; Harrison, Executor,* v. *Commonwealth,* 123 Va. 101, 96 S. E. 165. The statute, has no power to relieve a delinquent taxpayer therefrom. The same principles apply as to the interest which the officers, by mandate of the statute, are required to collect. *Commonwealth* v. *United Cigarette Machine Co.,* 119 Va.

478, 89 S. E. 935; *Union Tanning Co.* v. *Commonwealth, supra.*

The order of the trial court will be amended so as to relieve the petitioners from local taxes for the year 1911 and to correct the mistakes as to the taxation of money for the years 1912-1913. As thus amended, the order will be affirmed, and the case remanded to the trial court for such further orders, if any, as may be necessary.

*Amended and affirmed.*

REHEARD, RICHMOND, NOVEMBER 26, 1919.

PRENTIS, J., delivered the opinion of the court.

We are asked to reopen this case for certain reasons stated in the petition, but, in as much as the points urged have all been fully considered and determined either in the former opinion, by other decisions of this court, or by statutes which need no further interpretation, the petition will be denied.

[14] The petitioners take the position that no obligation rested upon them to list the decedent's property for taxation, and rely upon a number of statutes relating to the duties of commissioners of the revenue and examiners of records, apparently concluding therefrom that because these officials failed to observe these statutes, they were without fault, and hence that the property held by them as executors should escape taxation.

In this connection it seems pertinent to quote from *Commonwealth* v. *Schmelz,* 114 Va. p. 364, 76 S. E. 905:

"Under these provisions of the Code, if there has been an error in the assessment complained of to the prejudice of the taxpayer (not caused by his failure or refusal to furnish a list of his property to the commissioner of the rev-

enue) he is entitled to be relieved to the extent of the erroneous assessment. If, on the other hand, the error in the assessment or in the failure to assess his property be to the prejudice of the State, the State is entitled to receive from him the taxes properly assessable against him. In other words, the taxpayer who comes into court under these sections to be relieved from paying more taxes than he claims he ought to pay renders himself liable in that proceeding to pay all taxes with which he is chargeable in that jurisdiction upon a correct assessment of his property. This is the practice in some of the courts of the State, and we think is the proper practice. It is the duty of the party who seeks relief under these statutes (and of all other persons) to pay taxes upon all of his property taxable in that jurisdiction. If he has been improperly assessed on some property and has not been assessed at all upon other property upon which he is assessable with taxes, there is no hardship—indeed, it is only just and equitable—in asessing him with and requiring him to pay all the taxes with which he is assessable in that jurisdiction as a condition to granting him the relief sought. There is no difficulty in a proceeding like this to be relieved from an erroneous assessment for the court to examine into and do all that the commissioner of the revenue is required to do under the provisions of sections 508 and 509 of the Code."

It serves no good purpose, then, to inquire whether or not the officials charged with the duty of enforcing the tax statutes requiring proper returns performed their duty, for when the case was heard in the Circuit Court of Culpeper county it was its duty to enter an order requiring the petioners to pay such taxes as they should have paid, and this without reference to any omissions, defects or deficiencies in the assessments previously made.

Section 174 of the Constitution provides, among other things, that "no statute of limitation shall run against any

claim of the. State for taxes upon any property; nor shall the failure to assess property for taxation defeat a subsequent assessment for, and collection of, taxes for any preceding year or years," etc. ·

[15]   No dereliction of the examiners of records in failing to report the property, or of the. commissioner of the revenue in failing to assess it for taxation can relieve any taxpayer of his own duty to list and return his taxable property for taxation, nor can such concurring failures and omissions relieve any of the property from its just proportion of the tax burdens, which are intended to be equal and uniform.

[16]   It is. claimed that under the segregation act (Acts 1915, p. 119), no local tax can be levied .upon the property of John F. Rixey's estate in the hands of his executors, because such tax can be only assessed "on all such segregated intangible property assessed to the residents in the magisterial district proposed to be taxed for district purposes, to be used exclusively for the construction and repair of roads included within the magisterial district."   We think this point is. fully answered in the preceding opinion, and that either John F. Rixey or his executors, for the purpose of taxation, must be .deemed residents of Stevensburg magisterial district, within the meaning of this statute.   Any other construction would violate section 168 of the Constitution, requiring that "all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws;" because the *situs* of this property for taxation is still in that district, and the taxes thereon must be uniform with the taxes imposed upon all similar property, the *situs* of which is in that district.

[17]   It is also urged that no penalties or interest should be added to the taxes which are held to be due.   As penal-

ties and interest are imposed by statute upon taxpayers who
are in default in order to insure the prompt payment of
taxes which are necessary for the support of the govern-
ment, the courts have no authority to relieve them there-
from.  The citizen who desires to avoid paying such pen-
alties and interest can pay the tax assessed promptly, and
then institute the proceeding provided by statute for exon-
eration therefrom.  If he establishes the invalidity of the
tax or any part thereof, the State or local authorities are
required to refund the amount illegally extracted.  If he
declines to pay upon the ground of the invalidity of the tax
assessed, he must take the consequences if his litigation
results unfavorably to him, and one of these inevitable con-
sequences is that he must pay penalties and interest upon
taxes lawfully due which have not been promptly paid.

The penalties referred to are not penalties which are im-
posed for failure to answer interrogatories, or to return
lists, but the penalties imposed by section 603, which ap-
plies to all taxpayers, even to those not otherwise in default,
who fail to pay their taxes on or before the first day of De-
cember of each year.  This penalty is not imposed by the
original assessment, but it always accrues for failure to pay
the amount due by that date.  In this case, the taxpayer
not only did not promptly pay those omitted taxes after
they had been assessed, but also refused to pay the taxes
for 1915, 1916 and 1917, which were regularly assessed dur-
ing those years, and should have been paid on or before the
first day of December in each year in order to avoid the
penalty.

The interest is controlled by section 508 of the Code.  As
that section read before and after the amendment of 1914
(Acts 1914, p. 486), it was the duty of the commissioner of
the revenue, or other official, to assess omitted taxes, and
he was required to add interest thereon at the rate of 6%
per annum, except in cases where the tax had been omitted

by no fault of the person charged with the tax; so that as to interest upon omitted taxes assessed prior to the amendment of that section by the Acts of 1916 (p. 826) and 1918 (p. 432), the question depends upon whether or not the person charged with the tax was without fault. This question should be determined by the court in each specific case. It appears to have been properly determined in this case against the taxpayer by the trial court. Such omitted taxes bear interest from December 1st in each year.

[18]   As to the taxes which were regularly assessed for 1915, 1916 and 1917, they are not omitted taxes, and there is no statute requiring interest to be paid thereon, and hence none can be collected. Code, section 636, relates only to interest on taxes on land returned delinquent.

So much of the order heretofore entered in this cause as awarded costs against the plaintiffs in error will be set aside and annulled, and the case remanded to the trial court for such further orders as may be necessary and proper.

*Rehearing denied.*